2005 SD 48

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**William J. LOVELAND, Defendant and Appellee.**

No. 23382.

Supreme Court of South Dakota.

Considered on Briefs March 21, 2005.

Decided April 20, 2005.

Lawrence E. Long, Attorney General, Jeffery J. Tronvold, Assistant Attorney General, Pierre, SD, for plaintiff and appellant.

Timothy T. Hogan of McCann, Ribstein, Hogan & McCarty, Brookings, SD, for defendant and appellee.

MEIERHENRY, Justice.

[¶1.] This is an intermediate appeal from the trial court's order suppressing evidence of cocaine in the defendant's urine. We reverse.

**FACTS**

[¶2.] During the early morning hours of May 1, 2004, police responded to a noise complaint at a Brookings residence. Upon their arrival, the police could see individuals in the backyard, several of which were holding alcoholic beverage containers. As Officer Weber of the Brookings Police Department walked into the yard, some of these individuals started running. Shortly thereafter, William Loveland was apprehended by Officer Weber and arrested for fleeing an officer. Loveland was searched and a glass pipe and a small glass jar containing marijuana were found on his person. Loveland was then taken to the Brookings County Detention Center, where officers secured a urine sample from him. Loveland did not consent to providing the urine sample. The sample

was forwarded to the South Dakota Health Laboratory along with a "Subject's History Form." This form is filled out by the police and asks for basic information about the individual whose urine is to be tested. It also asks whether a general drug screen is wanted or a screen for a specific drug only. In this case, the arresting officer requested a complete drug screen of the sample rather than a specific screen for marijuana only. The drug screen resulted in a positive test for both marijuana and cocaine. Due to the positive test for cocaine, Loveland was charged with possession of a controlled substance in addition to the charges for possession of marijuana, possession of drug paraphernalia, underage consumption and violation of a city ordinance prohibiting fleeing from an officer. Loveland filed a motion to suppress the drug screen evidence, claiming that the drug screen of the urine sample violated his Fourth Amendment right to be free of unreasonable searches and seizures.

[¶3.] A motion hearing was held on the suppression issue. At the hearing, Loveland did not contest the constitutionality of the *seizure* of his urine, nor did he contest the testing of the urine for marijuana. However, Loveland argued that the scope of the drug screen was impermissibly expanded to test for the presence of drugs for which there was no probable cause to believe were present; specifically, cocaine. Loveland compares this to the type of general exploratory search prohibited by *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971) (affirming the plain view doctrine but warning that the doctrine "may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges"). The trial court agreed that the testing for drugs other than those for which the State had probable cause was an illegal search and seizure. The trial court entered an order suppressing any evidence related to the presence of cocaine in Loveland's urine. The State then filed a petition for intermediate appeal, which was granted by this Court.

## STANDARD OF REVIEW

[¶4.] "A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo." *State v. Chavez*, 2003 SD 93, ¶13, 668 N.W.2d 89, 95.

## ISSUE

Whether the trial court erred when it suppressed all evidence of the presence of cocaine in Loveland's urine.

## DECISION

[¶5.] The issue on appeal is narrow and straight-forward. After a urine sample is properly seized pursuant to an arrest on drug charges, may the sample be tested for the presence of all illegal substances or must the test be limited only to the suspected illegal substance? Loveland argues that the Fourth Amendment of the United States Constitution and Article VI § 11 of the South Dakota Constitution require probable cause to search for each specific substance before the State can test for it. To test for a substance without probable cause to believe it may be present, Loveland claims, is an unconstitutional search. In response, the State does not directly argue the issue of whether there was probable cause to test for cocaine in the urine sample. Instead, the State asserts that once the police rightfully obtain the sample, the subsequent conduct of testing the sample is not a search that is subject to Fourth Amendment protections. In this regard, the State points out that the Fourth Amendment protects a citizen from official conduct only when that conduct infringes upon a legitimate expecta-

tion of privacy. *See U.S. v. Jacobsen,* 466 U.S. 109, 122, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85, 100 (1984) (analyzing an alleged violation of the Fourth Amendment and stating: "We must first determine whether this can be considered a 'search' subject to the Fourth Amendment—did it infringe an expectation of privacy that society is prepared to consider reasonable?"). The State claims there is no reasonable expectation of privacy concerning a urine sample after it has properly been seized; therefore, the Fourth Amendment is inapplicable to the subsequent testing of the sample. *See generally State v. Hauge,* 103 Hawaii 38, 79 P.3d 131, 144–46 (2003) (discussing whether a privacy interest continues to exist in a lawfully procured blood sample).

[¶ 6.] The Fourth Amendment to the U.S. Constitution and Article VI § 11 of the South Dakota Constitution protect against "unreasonable searches and seizures." Not all governmental intrusions, however, are considered a search or seizure subject to Fourth Amendment protection. In *Katz v. United States,* a two-part test to assist in determining whether a governmental intrusion raises Fourth Amendment implications was set forth. 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring). Under *Katz,* the Fourth Amendment affords protection to those who "first ... have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* See also *State v. Wellner,* 318 N.W.2d 324, 328 (S.D.1982); *State v. No Heart,* 353

N.W.2d 43, 45 (S.D.1984); *Cordell v. Weber,* 2003 SD 143, ¶ 12, 673 N.W.2d 49, 53.

[¶ 7.] The issue here involves the second prong of the *Katz* analysis. The question is whether Loveland had an expectation of privacy in the urine sample that "society is prepared to recognize as reasonable." While the State urges us to find that Loveland had no reasonable expectation of privacy in the sample generally, we restrain ourselves to a more limited holding.[1] Once a urine sample is properly seized, the individual that provided the sample has no legitimate or reasonable expectation that the presence of illegal substances in that sample will remain private.

[¶ 8.] After the urine sample was seized by the police, testing the sample for the presence of illegal substances required no further seizure of Loveland's person or effects. The testing itself was only a search of items already seized. In an analogous context, the United States Supreme Court addressed whether there is a legitimate privacy interest in the presence of illegal substances so as to prevent the unintrusive use of a drug-sniffing dog, which reveals only the presence of illegal substances:

> Official conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment. We have held that any interest in possessing contraband cannot be deemed legitimate, and thus, governmental conduct that only reveals the possession of contraband compromises no legitimate privacy interest. This is

---

1. We are hesitant to hold there is no privacy interest at all in these urine samples, as such samples may contain vast amounts of sensitive personal information about the person they were taken from. *See e.g. Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639, 659 (1989) ("chemical analysis of urine, like that of blood, can reveal a host of private medical facts about an employee, including whether he or she is epileptic, pregnant, or diabetic."); *see also Luck v. Southern Pacific Transportation Co.,* 218 Cal.App.3d 1, 15–17, 267 Cal.Rptr. 618 (1990).

because the expectation that certain facts will not come to the attention of the authorities is not the same as an interest in privacy that society is prepared to consider reasonable.

*Illinois v. Caballes,* —— U.S. ——, ——, 125 S.Ct. 834, 837–38, 160 L.Ed.2d 842, —— (2005) (citing *Jacobsen,* 466 U.S. at 122–23, 104 S.Ct. at 1661, 80 L.Ed.2d at 100–01 (internal citations and quotation omitted)).

[¶ 9.] In the present case, the police lawfully seized the urine sample and any substances contained therein. The testing to determine whether that sample contained traces of cocaine compromises no legitimate privacy interest. *Id.*; *See also Jacobsen,* 466 U.S. at 123, 104 S.Ct. at 1662, 80 L.Ed.2d at 101 ("[G]overnmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest."). Much like the use of a well-trained drug detection dog described in *Caballes,* the urinalysis utilized by the state "does not expose noncontraband items that otherwise would remain hidden from public view[.]" *Caballes,* —— U.S. at ——, 125 S.Ct. at 838, 160 L.Ed.2d at —— (citation and quotations omitted). The testing only revealed the possession of contraband. Because testing the properly seized urine sample for illegal substances other than marijuana did not compromise any legitimate interest in privacy, such testing did not implicate the Fourth Amendment's protection against unreasonable searches and seizures.

[¶ 10.] The trial court is reversed.

[¶ 11.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and ZINTER, Justices, concur.