2012 UT 7

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jed Ozzie PRICE, Defendant and Appellant.**

No. 20090990.

Supreme Court of Utah.

Jan. 27, 2012.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., for plaintiff.

Jed Ozzie Price, pro se.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 This case comes before us on interlocutory appeal from the district court's denial of a motion to suppress. The defendant, Mr. Price, seeks to suppress evidence of a blood screen that tested positive for the presence of tetrahydrocannabinol (THC), the principal psychoactive constituent of marijuana. Mr. Price argues that testing for THC was outside the scope of the warrant because the magistrate's probable cause determination was based only on the suspicion that Mr. Price had been driving under the influence of alcohol. We hold that, after his blood was lawfully obtained, Mr. Price did not have a reasonable expectation of privacy in any contraband in his blood. Furthermore, the test for THC did not infringe on any legitimate privacy interests. The testing was therefore valid, and Fourth Amendment protections were not triggered.

## BACKGROUND

¶ 2 While driving on September 5, 2008, Mr. Price allegedly failed to yield the right of way by running a yield sign, striking another vehicle, and killing a 16–year–old passenger in that vehicle.[1] A Weber County deputy interviewed Mr. Price at the scene of the accident. During his encounter with Mr. Price, the deputy believed that he could smell alcohol on Mr. Price's breath. The deputy, also aware that Mr. Price was an alcohol-restricted driver, asked Mr. Price to submit

---

1. This recitation of facts is based on the district court's findings of fact following a hearing on Mr. Price's motion to suppress.

to a portable breath test. Mr. Price consented. The breath test was positive for the presence of alcohol. The deputy then asked Mr. Price to accompany him to the police station for further testing, and Mr. Price again consented.

¶ 3 At the police station, however, Mr. Price refused to submit to a blood test. The deputy then prepared an affidavit in support of a warrant to seize Mr. Price's blood for testing to determine his blood-alcohol level. The only item specified in the warrant was "blood," and it did not specify what tests could be conducted. A magistrate issued the warrant. Two vials of blood were obtained from Mr. Price and sent to the crime lab, where the blood was tested for the presence of alcohol, cocaine, THC, morphine, and methamphetamine. The test results came back positive for the presence of THC.

¶ 4 Mr. Price was charged with causing death while driving with a measurable controlled substance (THC), a third degree felony under Utah Code section 58–37–8(2)(g)–(h), and with failing to yield the right of way, a class C misdemeanor under Utah Code sections 41–6a–202(1) and 41–6a–902(3)(a). Mr. Price filed a motion to suppress evidence of the THC results, claiming that the warrant permitted testing his blood only for the presence of alcohol. The district court found that (1) there was sufficient probable cause to support the issuance of the search warrant, (2) the blood sample was lawfully taken from Mr. Price, and (3) once the blood sample was lawfully taken, Mr. Price lost any reasonable expectation of privacy in the testing for intoxicants in his blood. The district court therefore denied the motion to suppress. Mr. Price petitioned the court of appeals for interlocutory review of the district court's denial of the motion to suppress. The court of appeals granted Mr. Price's petition and certified the case to this court. We have jurisdiction under section 78A–3–102(3)(b) of the Utah Code.

**STANDARD OF REVIEW**

¶ 5 The district "court's ruling on a motion to suppress is reviewed for correctness, including its application of the law to the facts." *State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251. "The [district] court's underlying factual findings are reviewed under the clearly erroneous standard." *Id.*

**ANALYSIS**

¶ 6 Mr. Price asserts that testing his blood for THC, rather than only alcohol, was outside the scope of the warrant for two reasons. First, the officer did not have probable cause to test for intoxicants other than alcohol. Second, the officer sought the warrant for the purpose of testing *only* the alcohol content of his blood. Mr. Price thus contends that testing for THC, rather than only alcohol, was a violation of his Fourth Amendment rights.[2] The State counters that testing for intoxicants in Mr. Price's blood was valid because Mr. Price did not have a reasonable expectation of privacy in the presence of contraband in his lawfully obtained blood. As a result, the State argues that the Fourth Amendment's protections were not triggered by the search. We agree.

¶ 7 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment thereby safeguards "the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government." *City of Ontario v. Quon*, —— U.S. ——, 130 S.Ct. 2619, 2627, 177 L.Ed.2d 216 (2010) (internal quotation marks omitted). "Blood tests plainly constitute searches of persons, and depend antecedently upon seizures of persons." *State v. Tripp*, 2010 UT 9, ¶ 26, 227 P.3d 1251 (internal quotation marks omitted).

¶ 8 In this case, Mr. Price does not challenge the issuance of the warrant, the seizure of his blood, or the search of his blood for the presence of alcohol. Instead, he challenges

---

**2.** Mr. Price also challenges the validity of the search of his blood under article I, section 14 of the Utah Constitution. This claim was not preserved, and Mr. Price does not contend that any exceptions to the preservation requirement apply; we therefore decline to address it. *See, e.g., Donjuan v. McDermott*, 2011 UT 72, ¶¶ 19–21, 266 P.3d 839.

only the testing of his blood for the presence of THC.

¶ 9 "[T]he fundamental right protected by the Fourth Amendment is a person's reasonable expectation of privacy." *State v. James*, 2000 UT 80, ¶ 9, 13 P.3d 576 (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Conduct that does not infringe upon a legitimate expectation of privacy does not implicate Fourth Amendment protections. *See Illinois v. Caballes*, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). In *Katz v. United States*, Justice Harlan described the two-part threshold inquiry to determine whether a governmental intrusion is subject to Fourth Amendment scrutiny. 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Under *Katz*, the Fourth Amendment is implicated only when (1) an individual has "exhibited an actual (subjective) expectation of privacy" and (2) "the expectation [is] one that society is prepared to recognize as 'reasonable.'" *Id.; see also, e.g., Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (adopting this two-part inquiry). We hold that Mr. Price did not have a reasonable expectation of privacy in the contraband contents of his blood.

¶ 10 "[T]he expectation 'that certain facts will not come to the attention of the authorities' is not the same as an interest in 'privacy that society is prepared to consider reasonable.'" *Caballes*, 543 U.S. at 408–09, 125 S.Ct. 834 (quoting *Jacobsen*, 466 U.S. at 122, 104 S.Ct. 1652). In *Caballes*, the U.S. Supreme Court held that "any interest in possessing contraband cannot be deemed 'legitimate.'" *Id.* at 408, 125 S.Ct. 834. Applying *Caballes*, the Supreme Court of South Dakota upheld a urine test that revealed the presence of cocaine when the warrant for the urine test was based on probable cause for the possession of only marijuana. *State v. Loveland*, 2005 SD 48, ¶ 9, 696 N.W.2d 164, 167. The court held that the government's conduct "did not implicate the Fourth

Amendment's protection against unreasonable searches and seizures" because testing for cocaine "did not compromise any legitimate interest in privacy." *Id.* We similarly hold that once a blood sample has been legitimately seized, the individual from whom that sample was taken has no legitimate expectation of privacy in the contraband contents of his blood.

¶ 11 Although there is no legitimate privacy interest in the presence of contraband in one's blood, we must nevertheless analyze whether the government's conduct went beyond a test for contraband and infringed on a legitimate privacy interest. It is undisputed that "chemical analysis ... of blood[ ] can reveal a host of private medical facts about an [individual]." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Fourth Amendment protections may be implicated when tests are aimed at detecting contraband but also have the potential to reveal lawful intimate details—such as private medical facts—for which individuals retain legitimate privacy interests. *See Kyllo*, 533 U.S. at 34–35, 121 S.Ct. 2038.

¶ 12 Mr. Price certainly retained a legitimate privacy interest in the non-contraband contents of his blood. Testing Mr. Price's blood for HIV status, DNA information, blood type, or other private medical facts therefore would have infringed upon a legitimate privacy interest. But that did not occur here. The THC test conducted on Mr. Price's blood was limited to revealing only the blood's THC contents,[3] for which Mr. Price retains no legitimate privacy interest. Tests for contraband that cannot reveal details regarding legitimate privacy interests do not implicate Fourth Amendment protections. *Caballes*, 543 U.S. at 408, 125 S.Ct. 834. For example, the U.S. Supreme Court has upheld the use of "a well-trained narcotics-detection dog" to reveal the presence of narcotics during a routine traffic stop, because the use of drug sniffing dogs can disclose "only the presence or absence of nar-

---

**3.** We acknowledge that the toxicology screen tested for contraband items other than THC. Because Mr. Price does not challenge those tests separately, however, we do not address whether the scope of those tests implicated the Fourth Amendment's protections by infringing on legitimate privacy interests.

cotics, a contraband item." *Id.* at 409, 125 S.Ct. 834 (internal quotation marks omitted). Because testing Mr. Price's blood for the presence of THC could not infringe on a legitimate privacy interest, the test is not subject to the protections provided by the Fourth Amendment.

¶ 13 In this case, the State's test for THC was limited to revealing only the presence of contraband in Mr. Price's blood. As a result, the test did not detect private medical facts for which Mr. Price retained a legitimate privacy interest. Testing Mr. Price's blood for THC therefore did not implicate Fourth Amendment protections. The district court thus properly denied Mr. Price's motion to suppress.

## CONCLUSION

¶ 14 Individuals do not have a privacy interest in the presence of contraband in their blood. Once lawfully seized, blood may be tested for the presence of contraband without triggering Fourth Amendment protections so long as tests are conducted in a manner that cannot reveal details regarding legitimate privacy interests. Affirmed.

Chief Justice DURHAM authored the opinion of the Court, in which Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE joined.