*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 11**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

GABRIEL GUTIERREZ-PEREZ,
*Appellant.*

No. 20120455
Filed April 29, 2014

Third District, Salt Lake Dep't
The Honorable Judith S.H. Atherton
No. 111904824

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen.,
Salt Lake City, for appellee

David L. Crowley, Joseph Jardine, Farmington, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### INTRODUCTION

¶1 Gabriel Gutierrez-Perez (Defendant) pled guilty to criminally negligent automobile homicide and driving under the influence of alcohol. Before making this plea, he reserved his right to appeal the district court's denial of his motion to suppress evidence obtained through a blood draw. Defendant contends that the affidavit submitted by law enforcement in order to obtain the warrant to draw his blood was not supported by an oath or affirmation, as required by both the United States and Utah constitutions. Accordingly, he argues in this appeal that the district

court erred when it denied his motion to suppress because the warrant was unconstitutional.

¶2 We disagree. The district court was correct when it concluded that the warrant application was supported by an affirmation, thereby satisfying the "Oath or affirmation" requirements of both the United States and Utah constitutions. We therefore affirm the district court's denial of Defendant's motion to suppress.

## BACKGROUND

¶3 On May 22, 2011, Defendant was involved in a multi-vehicle automobile accident after he failed to stop at a red light. Several people were injured and one person died as a result of the accident. Following the accident, Defendant fled the scene but was soon captured by the police. He admitted to the police officers on the scene that he had been drinking alcohol, and again, while he was being transported to the hospital, admitted to the officers that he had been drinking throughout the night prior to the accident.

¶4 The investigating officer remotely applied for and obtained a warrant to draw Defendant's blood by logging onto the Utah Criminal Justice Information System and applying for an eWarrant. The eWarrant application included a screen labeled "Affidavit Submission for eWarrant" and included the statement: "By submitting this affidavit, I declare under criminal penalty of the State of Utah that the foregoing is true and correct." The officer applying for the warrant electronically submitted the eWarrant application, and the on-call judge found probable cause to believe that Defendant's blood contained evidence that he had been driving while under the influence of alcohol and issued the eWarrant.

¶5 After obtaining the eWarrant, the police executed it and drew Defendant's blood two separate times, the second being about one hour after the first. Three days later, using the same eWarrant system, the police obtained another warrant to obtain blood samples that were drawn at the hospital on the day of the accident. The results from a test of Defendant's blood indicated that his blood alcohol level at the time of the blood draw was 0.11.

¶6 Defendant moved to suppress the evidence obtained by these warrants on the ground that they were unconstitutional since they were not supported by an oath or affirmation, as required by both the Utah and United States constitutions. The district court denied the motion. Defendant eventually pled guilty to criminally negligent automobile homicide and driving under the influence of alcohol, but reserved his right to challenge the district court's

decision to deny his motion to suppress on appeal. We have jurisdiction pursuant to section 78A-3-102(3)(b) of the Utah Code.

## STANDARD OF REVIEW

¶7    The issue in this case is whether the district court properly concluded that Utah's eWarrant application satisfies the constitutional "Oath or affirmation" requirement.  "The district court's ruling on a motion to suppress is reviewed for correctness, including its application of the law to the facts."[1]

## ANALYSIS

¶8    This case involves a single issue: whether the procedure used to obtain the warrants to draw Defendant's blood—Utah's eWarrant system—meets the constitutional requirement that a warrant issue only upon probable cause supported by an "Oath or affirmation."[2] The State concedes that the eWarrant application does not include an oath, but argues that it is nevertheless constitutionally sufficient because it is supported by an affirmation. Defendant, on the other hand, argues that the eWarrant application is unconstitutional because it incorporates neither an oath nor an affirmation. Defendant advances a number of arguments in support of this conclusion. First, he argues that we have already set forth the requirements for a valid oath or affirmation in *Mickelsen v. Craigco, Inc.*[3] and that the affirmation at issue in this case clearly does not comply with those requirements. Second, he argues that because the eWarrant application incorporates language from the Utah statute governing "unsworn declarations," we must therefore construe it as an unsworn declaration instead of an oath or affirmation. Third and finally, he argues that the eWarrant application does not qualify as an affirmation because it does not explicitly state that the affiant may be subject to prosecution for perjury if he makes a false statement.

¶9    We are not persuaded by any of these arguments. Instead, we conclude that, given the original understanding of what constitutes an "affirmation" at common law and at the time of our nation's founding, the language used in the eWarrant application is sufficient to satisfy the constitutional requirement that the warrant be

---

[1] *State v. Price*, 2012 UT 7, ¶ 5, 270 P.3d 527 (internal quotation marks omitted).

[2] U.S. CONST. amend. IV; UTAH CONST. art. I, § 14 ("oath" not capitalized).

[3] 767 P.2d 561, 564 (Utah 1989).

issued upon "Oath or affirmation." Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

## I. *MICKELSEN* DOES NOT SET FORTH ANY REQUIREMENTS FOR AN OATH OR AFFIRMATION BECAUSE THAT CASE WAS CONCERNED WITH VALID VERIFICATIONS AND IS THEREFORE INAPPLICABLE

¶10 Defendant first argues that we have already set forth the requirements for a valid oath or affirmation in *Mickelsen v. Craigco, Inc.*[4] In that case, we stated that

> [i]n order to end the confusion in our case law, we join those jurisdictions and the dissenters on our own Court in *Colman v. Schwendiman*. We adopt as our rule that for a valid verification, (1) there must be a correct written oath or affirmation, and (2) it must be signed by the affiant in the presence of a notary or other person authorized to take oaths, and (3) the latter must affix a proper jurat. There is no minimum requirement that an oath must be administered to the affiant or that the affiant must speak an oral oath or affirmation or raise his or her hand.[5]

Throughout his opening brief, Defendant repeatedly contends that the eWarrant application fails to meet this standard. Specifically, he argues that because (1) the affidavit was not signed in the presence of a notary or another person who was authorized to take oaths; and (2) because there was no jurat affixed to the officer's affidavit, it is therefore not a proper written oath or affirmation. Defendant also contends that the eWarrant application was improper because the officer applying for the warrant never spoke with the magistrate and was not verbally administered an oath for either warrant application that he submitted.[6]

¶11 We do not agree with this reading of *Mickelsen* and instead conclude that the requirements set forth in *Mickelsen* are inapplicable to this case. Contrary to Defendant's argument, the three

---

[4] 767 P.2d 561 (Utah 1989).

[5] *Id*. at 564 (internal quotation marks omitted).

[6] The State does not dispute that the affidavit was not signed in the presence of a notary or another person that was authorized to take oaths and that there was no jurat affixed to the officer's affidavit.

requirements set forth in *Mickelsen* do not establish a standard for valid "oaths or affirmations." On the contrary, those requirements were clearly set forth in order to establish a rule for a valid *verification*.[7] Indeed, the first requirement set forth is that "there must be a correct written oath or affirmation."[8] But if this really is the first requirement for a valid oath or affirmation, as Defendant contends, then Defendant's proposed standard is circular, since in order to have a valid oath or affirmation you would first have to obtain a valid oath or affirmation. Accordingly, we reject Defendant's reading of *Mickelsen* and conclude that it is inapplicable here.

## II. THE LANGUAGE USED IN THE E-WARRANT APPLICATION IS NOT PER SE AN UNSWORN DECLARATION SIMPLY BECAUSE IT INCORPORATES STATUTORY LANGUAGE

¶12 Defendant next points out that the language used in the eWarrant application is taken directly from section 78B-5-705 of the Utah Code, which is entitled "Unsworn declaration in lieu of affidavit." That section states as follows:

> (1) If the Utah Rules of Criminal Procedure, Civil Procedure, or Evidence require or permit a written declaration upon oath, an individual may, with like force and effect, provide an unsworn written declaration, subscribed and dated under penalty of this section, in substantially the following form: "I declare (or certify, verify or state) under criminal penalty of the State of Utah that the foregoing is true and correct. Executed on (date). (Signature)".
>
> (2) A person who knowingly makes a false written statement as provided under Subsection (1) is guilty of a class B misdemeanor.[9]

Defendant then argues that because the language of the eWarrant application appears to be taken directly from section 78B-5-705 and because that section is entitled "Unsworn declaration in lieu of affidavit," the statement that the officer submitted to the magistrate must be interpreted as an unsworn declaration and not as an oath or affirmation.

---

[7] *Id.* at 563–64.

[8] *Id.* at 564 (internal quotation marks omitted).

[9] UTAH CODE § 78B-5-705.

¶13 We reject this argument because it assumes that the eWarrant application must be interpreted as an "unsworn declaration" simply because its language is the same or similar to the language identified in a statute entitled "Unsworn declaration in lieu of affidavit." Such a conclusion would be too hasty, however, because neither the United States nor the Utah constitution explicitly address the question of what constitutes a valid oath or affirmation, and the United States Supreme Court has also not yet addressed that issue. Accordingly, it is our task to determine "whether [the language] in question would have constituted a[n 'oath or affirmation'] within the original meaning of the Fourth Amendment."[10] And if it turns out that the eWarrant application's language would fit within that original meaning, then it is completely irrelevant whether the text was drawn from a statute governing "unsworn declarations" because it would still pass constitutional muster. As shown below, we conclude that the language used in the eWarrant application does qualify as an "affirmation" under the original meaning of that term, and accordingly we hold that the eWarrant application was supported by an affirmation as required by the Fourth Amendment.

### A. The Language Used in the eWarrant Application Falls Within the Original Meaning of "Affirmation" and Is Therefore Constitutional

¶14 The vast majority of the State's brief is devoted to an analysis of the historical meaning of the terms "Oath" and "affirmation" in an attempt to shed light on what those terms meant during the founding era. The State contends that this analysis is appropriate because the text of the Fourth Amendment does not give any clues as to what is meant by the "Oath or affirmation" requirement. Hence, it is appropriate to interpret the requirement's import by "begin[ning] with history," and, in particular, "the statutes and common law of the founding era."[11] Based on this historical analysis, the State concludes that the language in the eWarrant application comports with the historical meaning of "affirmation" and therefore satisfies the constitutional requirement. For the reasons stated below, we agree.

¶15 The State concedes that in submitting the eWarrant affidavit, the applying officer made an affirmation, not an oath. The key distinction between an "Oath" as opposed to an "affirmation" is that

---

[10] *United States v. Jones*, __ U.S. __, 132 S. Ct. 945, 950 n.3 (2012).

[11] *Virginia v. Moore*, 553 U.S. 164, 168 (2008).

the former invokes a reference to deity, whereas the latter does not.[12] At common law, great emphasis was placed upon the religious nature of an oath, presumably because of the "understanding that an oath's efficacy rested on its capacity to link the conscience of man to God."[13] Indeed, Lord Edward Coke, whose writings are considered by many to be the foundational source of British common law,[14] "forcefully supported the then-dominant view in English law that a 'heathen' was not to be believed and thus only Christian oaths sworn on the Gospels (to avoid idolatry) should be accepted in English courts."[15]

¶16 Based on this line of reasoning, initially "only Christians could serve as jurors or be sworn as witnesses under early English common law."[16] This restriction was lifted in 1688, when Parliament passed the first of several reforms allowing a "declaration of fidelity" or "affirmation" to replace the traditional Christian oath.[17] These reforms were tailored to benefit the Quakers, who had religious objections to taking an oath but were generally regarded as truthful people.[18] Under these new reforms, the affiant was required, instead of swearing, to "solemnly, sincerely and truly declare and affirm" that his testimony was true.[19] The focus of the affirmation was to be

---

[12] BLACK'S LAW DICTIONARY 68 (9th ed. 2009) (defining "affirmation" as "[a] solemn pledge equivalent to an oath but without reference to a supreme being or to swearing; a solemn declaration made under penalty of perjury, but without an oath").

[13] Eugene R. Milhizer, *So Help Me Allah: An Historical and Prudential Analysis of Oaths as Applied to the Current Controversy of the Bible and Quran in Oath Practices in America*, 70 OHIO ST. L.J. 1, 20 (2009).

[14] *See, e.g.,* John Marshall Gest, *The Writings of Sir Edward Coke*, 18 YALE L.J. 504, 506 (1909) ("Coke as a law writer was as far superior in importance and merit to his predecessors, at least if we except Bracton, as the Elizabethan writers in general were superior to those whom they succeeded, and, as the great Elizabethans fixed the standard of our English tongue, so Coke established the common law on its firm foundation.").

[15] Milhizer, *supra* note 13, at 22.

[16] *Id.* at 23.

[17] *Id.* at 38 (internal quotation marks omitted).

[18] *Id.*

"a public proclamation that is formally made in a way designed to awaken the conscience of the person affirming."[20]

¶17 By the time of the Declaration of Independence, the American colonies also recognized either an oath or an affirmation as a valid procedure for certifying witnesses, with some colonies extending the privilege to other groups besides the Quakers.[21] By the time of the Founding, "affirmation had become so widely accepted that it was expressly incorporated into the United States Constitution at each place where an oath is required."[22] Such an example is found in Article II of the Constitution, which prescribes the form of the "Oath or affirmation" that the President is required to make before taking office: "I do solemnly swear (or affirm) that I will faithfully execute the Office of the President of the United States, and will to the best of my Ability, preserve, protect, and defend the Constitution of the United States."[23]

¶18 Consonant with the English common-law understanding of an affirmation as "a public proclamation that is formally made in a way designed to awaken the conscience of the person affirming,"[24] the Framers did not understand an affirmation as requiring a particular form or wording. For example, the Delaware Constitution at the time of the Founding required incoming office holders to take an "oath, or affirmation," that they "will bear true allegiance."[25] The New Jersey Constitution at the same time required that incoming legislatures "take the following oath or affirmation, viz: 'I, A.B., do solemnly declare.'"[26] Although it was most common for oaths and affirmations to include the word "swear" or "affirm,"[27] as these

---

[19] *Id.* at 38 n.158 (quoting Quakers Act, 1721, 8 Geo., c. 6.).

[20] *Id.* at 37.

[21] *Id.* at 39.

[22] *Id.*

[23] U.S. CONST. art. II, § 1, cl. 7 (internal quotation marks omitted).

[24] *Milhizer, supra note 13,* at 37.

[25] *See* DEL. CONST. art. XXII (1776).

[26] N.J. CONST. art. XXIII (1776).

[27] *See, e.g.*, GA. CONST. art. I, § 15 (1789) (providing that incoming legislators "solemnly swear (or affirm, as the case may be)"); PENN. CONST. art. II, § 10 (1776) (requiring incoming

(continued)

examples show, these terms were used synonymously with terms like "declare," particularly where they were combined with other language making clear that the declaration was being made subject to criminal penalties.

¶19 Given this historical background, it seems clear that at the time of the adoption of the Fourth Amendment's "Oath or affirmation" requirement, the main requirements for a valid affirmation were that the affiant (1) knowingly and intentionally make a statement to a neutral and detached magistrate; (2) affirm, swear, or declare that the information in the statement is true and correct; and (3) acknowledge that he was subject to criminal penalty if he made the statement despite knowing that it was false.[28] In short, the affiant must "express[] the fact that he or she is impressed with the solemnity and importance of his or her words and of the promise to be truthful, in moral, religious, or legal terms."[29]

¶20 In the case now before us, the officer applying for the eWarrant satisfied these requirements when he declared that his statement was "true and correct" and acknowledged that he was subject to "criminal penalty of the State of Utah" if it was not, and then knowingly and intentionally submitted the affidavit to a neutral and detached magistrate. We therefore reject Defendant's argument that the eWarrant application should be interpreted only as an unsworn declaration, since the application's language comports with

---

legislators to take the "oath or affirmation of fidelity and allegiance . . . , viz: I do swear (or affirm) that").

[28] *See United States v. Bueno-Vargas*, 383 F.3d 1104, 1110 (9th Cir. 2004) ("An 'Oath or affirmation' is a formal assertion of, or attestation to, the truth of what has been, or is to be, said." (internal quotation marks omitted)); *id.* ("An oath or affirmation protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process." (internal quotation marks omitted)); *see also Johnson v. United States*, 333 U.S. 10, 13–14 (1948) ("[The Fourth Amendment's] protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

[29] *Bueno-Vargas*, 383 F.3d at 1110; *accord United States v. Collazo-Castro*, 660 F.3d 516, 523 (1st Cir. 2011); *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 845 (7th Cir. 2011).

the original understanding of an "affirmation," thereby satisfying the constitutional requirement that the application be supported by an "Oath or affirmation." Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

## III. IN ORDER TO CONSTITUTE A VALID AFFIRMATION, THE ATTACHED "CRIMINAL PENALTY" MUST IMPRESS UPON THE AFFIANT THE SOLEMNITY OF THE OCCASION

¶21 Defendant's final argument is that false statements made under an oath or affirmation must be punishable by perjury before they pass constitutional muster. And because the eWarrant application mirrors the language contained in section 78B-5-705's Unsworn Declaration Statute, Defendant concludes that the penalty for knowingly making a false statement must be the statute-mandated class B misdemeanor.[30] Accordingly, Defendant urges us to conclude that the eWarrant application cannot qualify as a valid oath or affirmation and that the warrant was therefore unconstitutional.

¶22 It appears to be historically accurate that those testifying under affirmation were generally subject to prosecution for perjury for making false statements.[31] That said, a felony was not a mandated criminal penalty in these prosecutions. The penalty was sufficient if it "impressed [upon the affiant] . . . the solemnity and importance of his or her words and of the promise to be truthful,"[32] which is the ultimate question in assessing whether a criminal penalty is

---

[30] *Compare* UTAH CODE § 78B-5-705(2) (providing that "[a] person who knowingly makes a false written statement [under this statute] is guilty of a class B misdemeanor"), *with id.* § 76-8-502 ("A person is guilty of a felony of the second degree" if he makes a "false material statement under oath or affirmation or swears or affirms the truth of a material statement previously made and he does not believe the statement to be true.").

[31] Milhizer, *supra* note 13, at 37 ("Affirmation does retain all of the other key elements that provide significance to an oath: a public proclamation that is formally made in a way designed to awaken the conscience of the person affirming, under the penalty of perjury.").

[32] *United States v. Bueno-Vargas*, 383 F.3d 1104, 1110 (9th Cir. 2004); *accord United States v. Collazo-Castro*, 660 F.3d 516, 523 (1st Cir. 2011); *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 845 (7th Cir. 2011).

constitutionally sufficient to support an affirmation. There is no doubt that the penalty of perjury is sufficient. Indeed, it is a well-established principle that an officer's statement fulfills the affirmation requirement if the procedures followed are such "that perjury could be charged . . . if any material allegation contained therein is false."[33] Perjury, however, has undergone a significant transformation since the founding era.

¶23  Under perjury law, affiants have not always been subject to felony prosecution. In fact, perjury was originally more of a sin than a crime.[34] It was not until the early 1600s that it was officially adopted as a punishable offense at common law.[35] Even then, courts treated perjury as a misdemeanor, not a felony.[36] Founding-era evidence also presents a mixed picture. While most of the early colonies incorporated the common law definition of perjury,[37] they did not adopt a uniform penalty.[38] By the early 1800s, however, the crime was a felony in most states.[39]

---

[33] *Bueno-Vargas*, 383 F.3d at 1111.

[34] *See, e.g.,* JAMES TYLER, OATHS: THEIR ORIGIN, NATURE AND HISTORY 196–97 (London, John W. Parker 1834) ("[T]he false-swearer and perjurer was left in former days entirely to the vengeance of the Deity, whose majesty he had insulted, and whose anger he had invoked.").

[35] *See* The Perjury Statute of 1563, 5 Eliz. I, ch. 9.

[36] *Id.*

[37] Most states adopted the common law definitions of crimes, which included the definition of perjury. Richard H. Underwood, *False Witness: A Lawyer's History of the Law of Perjury*, 10 ARIZ. J. INT'L & COMP. L. 215, 245 (1993); *see* 1 Colonial Laws of New York, ch. 8, pp. 129–130 ("An Act to prevent wilful Perjury," enacted Nov. 1, 1683).

[38] The early colonies did not classify penalties in terms of misdemeanors and felonies, and differed in their sanctions. Many colonies adopted the common-law approach. *See* Laws of the State of Delaware, ch. CC § 9 (1797) (providing that "party or parties [convicted of perjury] shall incur such forfeiture and receive and suffer such pains and punishments as are limited by the law and statutes of that part of Great Britain called England concerning perjury"); 5 Colonial Laws of New York, ch. 1472, pp. 168–69 (1771) (establishing that parties convicted of perjury "shall suffer all the Pains and Penalties of Perjury, which by the Laws of Great

(continued)

¶24 We therefore reject Defendant's argument that every oath or affirmation must be subject to the penalty of a felony. Felony perjury is not the baseline for a constitutionally valid oath or affirmation.

¶25 Being subject to "criminal penalty"—i.e., either a class B misdemeanor or a second-degree felony—for making a false statement is, therefore, sufficient to "impress the solemnity and importance" of the occasion upon the affiant. Accordingly, we reject Defendant's argument that an affirmation must necessarily be made under threat of a felony prosecution for perjury.

¶26 When the officer in this case submitted the eWarrant application, he had to check a box that stated "[b]y submitting this affidavit, I declare under criminal penalty of the State of Utah that the foregoing is true and correct." The two "criminal penalties" potentially applicable for making a false statement are the Unsworn Declaration statute and the "false statement" statute. The former provides that "[a] person who knowingly makes a false written statement [under this statute] is guilty of a class B misdemeanor,"[40] while the latter—Utah's equivalent to perjury—imposes the penalty of a second-degree felony upon someone who makes a "false material statement under oath or affirmation or swears or affirms the truth of a material statement previously made and he does not believe the statement to be true."[41] A class B misdemeanor is punishable by up to six months' imprisonment,[42] while a second-

_____

Britain can be inflicted."). Other colonies created their own perjury standards. *See* Laws of the Province of New Hampshire, An Act for the Punishing of Criminal Offenders (1759) (providing that convicted perjurers "shall for his or their offence lose and forfeit twenty pounds . . . [and] also to have imprisonment by the space of six months"). There were even act-specific perjury penalties. For example, in Georgia, a debtor in debtors prison could petition for work release if he could establish that he was unable to support himself while in prison. If he committed perjury in the petition, however, he was required to "stand in the pillory for the space of two hours, and [would] never after have the benefit of [the] act." Colonial Acts of Georgia, Act of March 6, 1776.

[39] Underwood, *supra* note 39, at 245.

[40] UTAH CODE § 78B-5-705(2).

[41] *Id.* § 76-8-502(1).

[42] *Id.* § 76-3-204(2).

degree felony is generally punishable by one to fifteen years' imprisonment.[43]

¶27 In our view, there is no reason to assume—as Defendant's argument does—that the threat of "up to six months" incarceration is inadequate to impress upon the affiant's mind the solemnity of the occasion and that such can be achieved only by the threat of "one to fifteen years" incarceration.[44] Instead, clearly either penalty would be more than sufficient to "impress the solemnity and importance" of the occasion upon the mind of the affiant, thereby ensuring that he is mindful "of his promise to be truthful" which, as explained above, is all that the Constitution requires for a valid affirmation. Thus, even if we accept Defendant's argument that the only penalty available in this case is the class B misdemeanor, the warrant application was nevertheless supported by a valid affirmation, as required by the Fourth Amendment, and was therefore constitutional.[45]

---

[43] *Id.* § 76-3-203(2).

[44] This seems particularly true given the fact that these penalties are set (and could therefore be changed) by the legislature. That is, if Defendant's view is adopted and a felony prosecution is deemed a necessary element of an affirmation, then if the legislature ever decided to change the penalty associated with the false statement statute to something less than a felony, it would be impossible to issue warrants since false statements made under oath and affirmation would no longer be punishable as felonies.

[45] The case at hand is very similar to a case presented before the Court of Appeals of New York, *People v. Sullivan*, 437 N.E.2d 1130 (N.Y. 1982), which illustrates that the threat of prosecution for a misdemeanor is sufficient support for an affirmation. *Sullivan* involved a warrant that was obtained based on an informant's unsworn statement that included a warning that "[f]alse statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law." *Id.* at 1132 (internal quotation marks omitted). In upholding the warrant, the court stated that

> [t]here is no constitutional prescription as to the particular form of the "oath or affirmation" or the exact manner in which it is to be administered. In the usual case, there will be a formal swearing before a notary to the truth of the information provided, and

(continued)

¶28 In sum, while applying for the eWarrant in this case, the officer declared that the information that he was submitting was "true and correct." Further, in making that declaration he expressly made himself subject to potential criminal penalty. This was more than enough to impress upon him the solemnity of the occasion. The officer's statement was therefore supported by a valid affirmation, and accordingly we affirm the district court's dismissal of Defendant's motion to suppress.

---

> any written statements submitted in support of the warrant application generally will contain the traditional jurat. This does not mean, however, that such procedural formality is *sine qua non* of the "oath or affirmation" requirement. Indeed, a method of verification by which the maker of the statement is first alerted to the criminal consequences of knowingly providing false information in connection with a warrant application and then voluntarily acknowledges his acceptance of those consequences should suffice for purposes of the constitutional mandate that a warrant be issued upon proof "supported by oath or affirmation."

*Id.* at 1133.

The court went on to note that the statute referred to in the statement does provide for criminal prosecution for a false statement in a document which contains such a reference and the court thus concluded that

> this statutorily authorized form notice served as the procedural and functional equivalent of the more traditional type of oath or affirmation. . . . Indeed, the form notice may provide a greater practical assurance against intentional misstatements of fact than the more mechanical and ofttimes routine procedure of swearing before a notary.

*Id.* at 1133–34; *see also Ferguson v. Comm'r*, 921 F.2d 588, 589–91 (5th Cir. 1991) (person who refused to use the word "swear" or "affirm" could satisfy oath or affirmation requirement by adding acknowledgement that she was subject to penalties for perjury to statement that facts to be given are "accurate, correct, and complete" (internal quotation marks omitted)).

## CONCLUSION

¶29   Based upon our analysis of the historical understanding of what constitutes a constitutionally valid "affirmation," we conclude that the language used in Utah's eWarrant system comports with that understanding and is therefore constitutionally sufficient to support the issuance of the warrants executed in this case. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

———————