

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00307-CR

———————————————————

CHAD CHRISTOPHER JACOBSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 4
Denton County, Texas
Trial Court No. CR-2017-05611-D

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Opinion by Justice Bassel

# OPINION

## I. Introduction

A jury convicted Appellant Chad Christopher Jacobson of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04. The trial court assessed his punishment at ninety days' confinement in the Denton County Jail and a $500 fine. The trial court suspended the sentence and placed Appellant on community supervision for a period of sixteen months.

In a single issue, Appellant claims that although the State obtained a warrant to draw his blood based on probable cause that he was driving while intoxicated, a second warrant should have been obtained that authorized a test to determine the blood's alcohol concentration. Without that second warrant, he argues, the test results should have been suppressed. We reject Appellant's contention.

Appellant's contention is premised on his reading of recent precedent from the court of criminal appeals as holding that a blood draw and a subsequent test of the drawn blood are separate searches, each requiring their own warrant. Appellant overreads this precedent. In the precedent, the defendant had an expectation of privacy in a blood sample that had been drawn for medical purposes, i.e., without a warrant. Here, Appellant's blood was drawn pursuant to a warrant based on probable cause to believe that he was guilty of the offense of driving while intoxicated; at that point, he had no reasonable expectation of privacy that required a second warrant to test the sample to determine its blood–alcohol content.

2

## II. Factual Background

The facts relevant to this appeal are uncontested; thus, we will forgo a detailed recitation of the background of the offense. Appellant committed traffic-law infractions and was stopped by police. He evidenced signs of intoxication. The arresting officers obtained a warrant authorizing a blood draw and transported Appellant to a hospital where his blood was drawn. Testing of the blood revealed that Appellant had a blood–alcohol concentration of 0.124.

At trial, Appellant objected on various grounds to the introduction of the blood kit containing the blood sample taken and of the blood-test results. Specific to his issue on appeal, Appellant objected that "the search warrant only allow[ed] the officer to obtain the specimen. The subsequent search, the analysis, was not by consent, and it was not by legal authority via a search warrant." The trial court overruled the objection.

## III. Standard of Review

When reviewing an objection that seeks to suppress evidence, we give almost complete deference to the trial court's determination of historical facts. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). This aspect of the standard does not impact our review because the facts are undisputed. Our task is to determine "whether [our] particular [undisputed] historical facts give rise to a reasonable expectation of privacy." *Id.* We make that determination by applying a de novo standard of review. *Id.*

3

## IV. Analysis

In his sole issue, Appellant argues that the trial court abused its discretion by denying his motion to suppress because the State failed to obtain a search warrant authorizing the testing and analysis of the blood sample taken from Appellant.

> **A.** **Appellant relies on the court of criminal appeals' opinion in** *State v. Martinez* **to argue that the State had to obtain a second warrant authorizing the testing of his blood to determine its blood–alcohol concentration.**

Appellant's argument—that his Fourth Amendment right against unreasonable searches and seizures[1] was violated—turns on his reading of the court of criminal appeals' opinion in *Martinez*. Appellant argues for an interpretation of the rule announced in *Martinez* that fails to confront the critical differences between the facts surrounding the blood draw in *Martinez* and those of his own blood draw. As we will explain in detail, Appellant's blindly pounding on the square peg of *Martinez* cannot drive it into the round hole of his facts.

In *Martinez*, the defendant was charged with intoxication manslaughter. *Id.* at 281. He had been transported to a hospital after an auto accident. *Id.* at 282. After his blood was drawn for medical purposes, he fled the hospital. *Id.* Law enforcement obtained a grand jury subpoena and took possession of the blood sample. *Id.* Law enforcement then submitted the sample for testing without having obtained a warrant

---

[1]Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

to permit that testing. *Id.* The trial court found that the test results were inadmissible. *Id.* at 283. The court of criminal appeals agreed. *Id.* at 281.

*Martinez* concluded that the State should have obtained a warrant before testing the sample. *Id.* The court of criminal appeals looked to its prior precedent and that of the United States Supreme Court to conclude that the defendant had an expectation of privacy in the sample. *Id.* at 283–91. First, the court noted that it had previously held that a person's expectation of privacy had three different stages in the process of drawing and testing blood: "(1) the physical intrusion into his body to draw blood, (2) the exercise of control over and the testing of the blood sample, and (3) obtaining the results of the test." *Id.* at 284 (quoting *State v. Hardy*, 963 S.W.2d 516, 526 (Tex. Crim. App. 1997)). After analyzing various authorities, the court reached the conclusion that under the facts before it, the defendant had an expectation of privacy in the second stage of the process that required the State to obtain a warrant when it sought to test blood extracted for medical reasons. *Id.* at 291.

The court summarized its reasoning in a paragraph that demonstrated that it was dealing with a situation in which the blood was drawn for medical purposes—unlike the situation in this appeal in which the blood was drawn pursuant to a warrant:

> Based on the foregoing, we believe the [*State v.*] *Comeaux*[, 818 S.W.2d 46 (Tex. Crim. App. 1991) (plurality op.)] plurality reached the correct result twenty-eight years ago when it considered the question we are faced with today. There are private facts contained in a sample of a person's blood beyond simple confirmation of a suspicion that a person is intoxicated.

5

These private facts are those that a person does not voluntarily share with the world by the mere drawing of blood and may be subject to Fourth Amendment protection. ***We hold that there is an expectation of privacy in blood that is drawn for medical purposes.*** The expectation is not as great as an individual has in the sanctity of his own body against the initial draw of blood. *Missouri v. McNeely*, 569 U.S. 141, 148, 133 S. Ct. 1552, 185 L.Ed.2d 696 (2013) (compelled physical intrusion beneath the skin and into the veins to obtain a sample of blood for use as evidence in a criminal investigation "implicates an individual's 'most personal and deep-rooted expectations of privacy[]'"[] (quoting *Winston v. Lee*, 470 U.S. 753, 760, 105 S. Ct. 1611, 84 L.Ed.2d 662 (1985))[)]; *Hardy*, 963 S.W.2d at 526. But it is greater than an individual has in the results of tests that have already been performed on the blood. Individuals in the latter case have, as we held in *Hardy* and *Huse*, no expectation of privacy. *Hardy*, 963 S.W.2d at 527; [*State v.*] *Huse*, 491 S.W.3d [833,] 842 [(Tex. Crim. App. 2016)].

*Id.* (emphasis added).

Appellant extracts what he describes as a "bright-line rule" from *Martinez* that mandates that blood testing—no matter how the sample was obtained—must be authorized by a separate warrant:

> The recently decided *Martinez* opinion is significant because it establishes a bright-line rule. Regardless of how the government obtains a blood sample—whether it is pursuant to a warrant or from a third-party that took the sample solely for medical purposes, any subsequent analysis of that sample by the government is a "search" under the Fourth Amendment that must be justified by a search warrant or a valid warrant exception.

But Appellant makes no effort to explain why a defendant would have an expectation of privacy in a sample drawn for the specific purpose of obtaining evidence in a DWI prosecution. Indeed, as we discuss below, our sister courts hold that *Martinez* does not mandate a second warrant to test a sample initially obtained by means of a

6

warrant. And, as we also discuss below, the holdings of our sister courts are not unique; they reach the same result as that reached by appellate courts across the country—that is, that there is no reasonable expectation of privacy in a blood sample drawn pursuant to a search warrant in a DWI case that prompts the need for a second warrant in order for law enforcement to determine the drawn blood's alcohol concentration.

**B.    Our sister courts have held that a second warrant is not required to test a blood sample obtained by a warrant.**

Within the past several months, the Dallas Court of Appeals, the Corpus Christi–Edinburg Court of Appeals, and the San Antonio Court of Appeals have held that *Martinez* does not mandate a second warrant to test a sample obtained initially by means of a warrant and thus does not create the bright-line rule that Appellant sees in *Martinez*. *See State v. Staton*, No. 05-19-00661-CR, 2020 WL 1503125, at *2–3 (Tex. App.—Dallas Mar. 30, 2020, no pet. h.); *Hyland v. State*, 595 S.W.3d 256, 257 (Tex. App.—Corpus Christi–Edinburg 2019, no pet.) (op. on remand); *Crider v. State*, No. 04-18-00856-CR, 2019 WL 4178633, at *2 (Tex. App.—San Antonio Sept. 4, 2019, pet. granted) (mem. op., not designated for publication). The opinions begin, as we have, by detailing that the blood draw in *Martinez* was not made pursuant to a warrant. The opinions then point to the fact that because the blood draw in each of their cases occurred pursuant to a warrant, *Martinez* has no application to their facts. *See Staton*,

7

2020 WL 1503125, at *2–3; *Hyland*, 595 S.W.3d at 257; *Crider*, 2019 WL 4178633, at *2.

*Crider* noted *Martinez*'s holding—that the drawing and the testing of blood are two separate searches—but rejected that holding as a rationale to require a second warrant to test a sample drawn originally pursuant to a warrant based on probable cause to believe that a defendant was driving while intoxicated. 2019 WL 4178633, at *2. There was simply no expectation of privacy left in the sample drawn pursuant to the warrant that prompted the need for a second warrant because

> [j]ust as a person who has given a blood sample for private testing reasonably can assume that sample will not be turned over to the State for another purpose, we reasonably can assume that where the police seek and obtain a blood draw warrant in search of evidence of intoxication, the blood drawn pursuant to that warrant will be tested and analyzed for that purpose.

*Id.*

Looking to its own opinion in *Martinez*,[2] which was affirmed by the court of criminal appeals, and to the precedents cited by the court of criminal appeals in its opinion in *Martinez*, the Corpus Christi–Edinburg court in *Hyland* relied on the disparate facts of those cases in contrast to its facts and rejected the need for a second warrant. 595 S.W.3d at 257. *Hyland* disposed of its appellant's claim concisely: "Hyland does not direct this Court to any authority or support, nor do we find any,

---

[2]*State v. Martinez*, 534 S.W.3d 97 (Tex. App.—Corpus Christi–Edinburg 2017), *aff'd*, 570 S.W.3d 278 (Tex. Crim. App. 2019).

that states that the State cannot re-analyze evidence lawfully in its possession pursuant to a valid search warrant." *Id.*

*Staton* relied on both *Crider* and *Hyland*. 2020 WL 1503125, at \*2–3. *Staton* agreed with *Crider* that *Martinez* could not be read to require specific authorization for testing when collection of the sample was done pursuant to a warrant based on probable cause. *Id.* at \*2. Looking to the principles of common sense that *Crider* relied on, the Dallas court noted that "common sense dictates that blood drawn for a specific purpose will be analyzed for that purpose and no other." *Id.* at \*2 (quoting *Crider*, 2019 WL 4178633, at \*2). The Dallas court held that *Martinez* had no application because it dealt with a different question—whether "an individual has an expectation of privacy in blood previously drawn **for purposes other than police testing**." *Id.* at \*3 (emphasis added).

### C. A litany of cases from other jurisdictions holds that a second warrant is not required under the circumstances presented here.

We will not examine in detail each of the cases, but the following is a catalog of opinions from other jurisdictions holding that a defendant does not have an expectation of privacy in the testing of a blood sample taken pursuant to a warrant when the testing involves only the determination of the sample's blood–alcohol concentration. *See United States v. Snyder*, 852 F.2d 471, 473–74 (9th Cir. 1988); *State v. Hauge*, 79 P.3d 131, 144 (Haw. 2003); *State v. Frescoln*, 911 N.W.2d 450, 456 (Iowa Ct. App. 2017); *State v. Fawcett*, 877 N.W.2d 555, 561 (Minn. Ct. App.), *aff'd*, 884 N.W.2d

380 (Minn. 2016); *State v. Swartz*, 517 S.W.3d 40, 48–50 (Mo. Ct. App. 2017); *People v. King*, 663 N.Y.S.2d 610, 614 (N.Y. App. Div. 1997); *State v. Price*, 270 P.3d 527, 529 (Utah 2012); *State v. Martines*, 355 P.3d 1111, 1116 (Wash. 2015); *State v. Sanders*, Nos. 93-2284-CR, 93-2286-CR, 1994 WL 481723, at *5 (Wis. Ct. App. Sept. 8, 1994) (not designated for publication).

We will not do our own summary of the cited cases because the Iowa Court of Appeals did an admirable job of summarizing many of them:

> Furthermore, though the issue has not been decided in Iowa, we note that other courts have held that a defendant loses a privacy expectation in blood after its lawful removal from the body, and therefore, any testing of that blood does not violate the constitutional protections from unreasonable searches and seizures. *See . . . Snyder*, 852 F.2d [at] 473–74 . . . (holding that "so long as blood is extracted incident to a valid arrest based on probable cause to believe that the suspect was driving under the influence of alcohol, the subsequent performance of a blood[–]alcohol test has no independent significance for [F]ourth [A]mendment purposes, regardless of how promptly the test is conducted"); . . . *Fawcett*, 877 N.W.2d [at] 561 . . . ("Once a blood sample has been lawfully removed from a person's body, a person loses an expectation of privacy in the blood sample, and a subsequent chemical analysis of the blood sample is, therefore, not a distinct Fourth Amendment event."); . . . *King*, . . . 663 N.Y.S.2d [at] 614 . . . ("It is also clear that once a person's blood sample has been obtained lawfully, he can no longer assert either privacy claims or unreasonable search[-]and[-]seizure arguments with respect to the use of that sample. Privacy concerns are no longer relevant once the sample has already lawfully been removed from the body, and the scientific analysis of a sample does not involve any further search and seizure of a defendant's person."); *see also* Andrei Nedelcu, *Blood and Privacy: Towards A "Testing-As-Search" Paradigm Under the Fourth Amendment*, 39 Seattle U. L. Rev. 195, 201 (Fall 2015) ("[N]ational search[-]and[-]seizure jurisprudence is largely in agreement: No express judicial authorization is needed to analyze a suspect's blood (or any other biological sample) once it has already been lawfully procured.").

10

*Frescoln*, 911 N.W.2d at 456.

If flesh needs to be put on the bones of the rationales of the opinions cited by *Frescoln*, it comes from a recent opinion of the Wisconsin Supreme Court. *See State v. Randall*, 930 N.W.2d 223 (Wis. 2019). *Randall* dealt with the question of whether a warrant was needed for testing when a defendant had consented to a blood draw and then had withdrawn that consent before the sample was tested. *Id.* at 225. *Randall* rejected the illogic of an argument that a party had "a privacy interest in the instrumentalities and evidence of crime for which the police were authorized to search." *Id.* at 237. The court noted the impact that such a position would have on searches incident to arrest where the State seized a bag of white powder or a pistol. *Id.* To accept the argument that a second warrant was needed, the State could not test the bag of powder or fingerprint the gun that law enforcement properly seized and would create the quandary that "having discovered the very thing for which it was authorized to search, the State could do nothing with it unless it thereafter obtained a warrant for its examination and use." *Id.* *Randall* rejected the claim that the Fourth Amendment places law enforcement in such a quandary and the thought that a party charged with driving while intoxicated has a reasonable expectation of privacy that protects the defendant from a search for evidence of a crime in a blood sample that was properly obtained by law enforcement:

> Upon her arrest, Ms. Randall's reduced expectation of privacy meant that she could not keep the presence and concentration of alcohol in her blood [a] secret from the police. So the only relevant question is

11

> whether the method by which the State obtained the non-private evidence satisfied the Fourth Amendment's requirements. Ms. Randall's consent to the blood draw satisfied those requirements, and that left the State free to test the blood sample for the non-private information.

*Id.* at 237–38. We agree with *Randall* that the Fourth Amendment does not require the State to obtain a second warrant to test a blood sample that was seized based on probable cause that a person was driving while intoxicated.

**D.** *Martinez* **has no application to our facts.**

All of the foregoing is the preface to our explanation regarding why the bright-line rule, which Appellant sees in *Martinez* as mandating a second warrant, does not exist. *Martinez* does state that multiple searches occur in the sequence of drawing and testing blood and that in the context of its facts, an expectation of privacy was incident to the draw and the test. But what it does not address is when a prior step in the process removes the expectation of privacy in a subsequent step. The expectation of privacy in the blood sample was not removed before the testing in *Martinez* because no legal authority was obtained to draw the blood. The appellant in *Martinez* retained the expectation that blood drawn for a medical purpose would not be turned over to law enforcement without law enforcement's protecting his Fourth Amendment rights and providing a justification for why that blood should be searched to obtain evidence to prosecute him. That step has already occurred in this case. The State has provided the justification and has been given the means of obtaining the blood to use as evidence against Appellant. He never explains how under the circumstances here, he

12

retained an expectation of privacy that his blood would not be tested so that it could be used for exactly the purpose for which it was seized.[3]

### E. We reject Appellant's contention that the warrant authorizing the drawing of his blood was an improper general warrant.

On a final note, we address one argument that we see as not covered by our discussion to this point. Appellant argues that the warrant in this case violates the rule against general search warrants. "The United States and Texas Constitutions [do] 'prohibit general warrants which fail to particularly describe the property to be seized and allow general, exploratory rummaging in a person's belongings.'" *In re Cook*, No. 14-19-00664-CR, 2020 WL 897120, at *5 (Tex. App.—Houston [14th Dist.] Feb. 25, 2020, orig. proceeding) (quoting *Walthall v. State*, 594 S.W.2d 74, 78 (Tex. Crim. App. [Panel Op.] 1980)). Appellant views the warrant in this case as violating that rule because "[t]he search warrant signed by the magistrate in this case simply call[ed] for a medical professional to withdraw samples of blood from Appellant's body and [to] deliver those samples to law enforcement."

The warrant in this case hardly sanctions a general rummaging through Appellant's property. As Appellant acknowledges, the warrant authorized the taking of a sample of Appellant's blood and the delivery of the sample to the officer who had transported Appellant to the hospital. His argument that the warrant was too

---

[3]Our holding does not address whether Appellant might have an expectation of privacy that his blood would not be tested for a substance unrelated to the purpose for which it was seized, and we express no opinion on that issue.

general is merely a shade and phase of Appellant's two-warrant argument that we have rejected. *See Crider*, 2019 WL 4178633, at \*2 ("Here, in contrast, police obtained Crider's blood sample pursuant to a valid search warrant. Although the warrant does not expressly authorize testing and analysis of the blood sample, *Martinez* does not require that it do so."); *see also Staton*, 2020 WL 1503125, at \*2 ("Although the warrant does not expressly authorize testing and analysis of the blood sample, *Martinez* does not require that it do so.").

**F.    Disposition**

We have conducted a de novo review of the legal issue raised by Appellant and conclude that it is without merit. Appellant, however, couches his issue on appeal as a claim that the trial court abused its discretion; based on the above analysis, we also hold that the trial court did not abuse its discretion by overruling Appellant's objections to the admission of the test results showing his blood–alcohol concentration. Accordingly, we overrule Appellant's sole issue.

**V.  Conclusion**

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Publish

Delivered:  April 23, 2020

14