In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2945

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REGINALD PALMER,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:99-30228-01-GPM--G. Patrick Murphy, Chief Judge.

Argued March 7, 2001--Decided March 27, 2001/*

Before DIANE P. WOOD, EVANS, and WILLIAMS, Circuit Judges.

Per Curiam.  Reginald Palmer was convicted on three counts of distributing crack within 1,000 feet of a playground. He appeals, challenging only the very lengthy prison sentence--475 months--he received.

In May and June 1998, Palmer sold small amounts (.9 grams, and 1.9 grams twice) of crack to Keenan Deal who was--much to Palmer's later surprise--cooperating with authorities. The sales occurred within 1,000 feet of Virginia Park, an East St. Louis, Illinois, playground. A superseding indictment charged Palmer with three counts of distributing crack, 21 U.S.C. sec. 841(a)(1), and three parallel counts of doing the deals within 1,000 feet of a playground, id. sec. 860(a). Palmer entered guilty pleas to all six counts without a plea agreement, but because the distribution counts were lesser-included offenses of the more serious "playground" counts, see Williams v. United States, 150 F.3d 639 (7th Cir. 1998), the district court entered judgment only on the latter.

In preparing the presentence investigation report (PSR), the probation officer calculated Palmer's relevant conduct using information from Deal and from federal agents who interviewed several sources, including Palmer's former neighbor, Robert Branscomb, and Warren Griffin,

a "governor" of the Gangster Disciples gang. The probation officer concluded that Palmer's relevant conduct totaled 353 grams/1 of crack: 98 grams from Deal, 14 grams from Branscomb, and 241 grams from Griffin. Palmer objected but, for the most part, provided only conclusory responses denying certain transactions or objecting to particular witness statements. He did, however, specifically object to any drugs involving Griffin, arguing that those activities were unreliable and too remote in time to be included in his relevant conduct under the sentencing guidelines.

At the sentencing hearing, Deal described five previous occasions when he bought 1.7 grams of crack from Palmer. He also testified about several more ounces of crack he saw Palmer carrying during those transactions. Branscomb testified that Palmer sold crack outside Branscomb's home "about every day during the year of 1998 and 1999." Finally, the government called a deputy U.S. marshal who had previously interviewed Griffin about his contacts with Palmer during 1996. Griffin, according to the marshal, had "taught [Palmer] the drug trade." Griffin allegedly told the marshal he received two ounces of crack from Palmer and had seen him in possession of seven or eight ounces of crack that Palmer and a friend had cooked from powder.

Palmer offered no direct evidence to support his objections to the PSR. He did, however, argue that a substantial portion of the relevant conduct amount, particularly the quantity attributable to him by reason of Griffin's statements, was based on hearsay and should not be included in the final calculation. Palmer suggested that the total amount of crack was only 135 grams, not 353.2, although it is unclear how he arrived at this calculation. The district judge determined:

There is a substantial, rational basis for attributing more than 150 grams to the defendant. Now, the Government has an exact 353.2 grams. I am not prepared to say that they are exactly correct, but I am prepared to say that there is substantially more than 150 grams that must be attributed to the defendant under the evidence that is before me.

We review for clear error the district court's calculation of the drug quantity attributed to Palmer as relevant conduct. United States v. Huerta, 239 F.3d 865, 875 (7th Cir. 2001). In doing so, we refrain from second-guessing the district judge, United States v. McEntire, 153 F.3d 424, 431 (7th Cir. 1998), and must affirm unless we are left with a "definite and firm

conviction that a mistake has been committed," Huerta, 239 F.3d at 875 (internal quotations and citation omitted).

Palmer first argues that the district court failed to make a specific finding of drug quantity; the judge's determination of "more than 150 grams" is legally insufficient, Palmer suggests. The government argues that Palmer forfeited this argument, and others, by failing to properly object at sentencing, and accordingly our review should only be for plain error. See Fed. R. Crim. P. 52(b); United States v. Krankel, 164 F.3d 1046, 1055 n.3 (7th Cir. 1998). We reject this argument and find the defendant's objections adequate to trigger clear error, rather than plain error, review.

Recognizing the importance of drug quantity in sentencing, we require that a sentencing court make an explicit drug-quantity finding and explain how it arrived at the sentence. McEntire, 153 F.3d at 435. The district court here specified only "more than 150 grams," but a more exact sum was not necessary given that anything between 150 and 500 grams would have resulted in the same sentencing range. But is the "more than 150 grams" finding supportable?

This case presents a situation we have been encountering with increased regularity. A defendant pleads guilty to dealing in small amounts of crack--here, Palmer sold only a total of 4.7 grams to Deal in the three transactions specifically charged in the indictment--but then the presentence report lists huge amounts of crack as "relevant conduct," which dramatically ratchet up the resting point on the sentencing guideline grid. We conclude here that the 98 grams attributed to Palmer through Deal and the 14 grams attributed to him through Branscomb, though dwarfing the amounts involved in the actual sales, are supportable based on our review of this record. But we have serious misgivings about the huge amount, 241 grams, piled on Palmer through a U.S. marshal's recitation of a statement given to him by Griffin, who did not personally testify (he took the Fifth) at the sentencing hearing. Our doubts about Griffin's evidence, inaccurately presented to us by the government as Griffin's "testimony," gives us great pause even if only a portion of it is needed to move Palmer over 150 grams. First, the matters related by Griffin are remote in time-- over 2 years old--to the sales to Deal that form the basis for the counts of conviction. Second, the district court did not make any specific findings as to Griffin's reliability, which probably is understandable given the fact that the way his "evidence" was presented affords no

basis for determining that what he told the
marshal was true or accurate.

Accordingly, given our serious concerns about
the Griffin evidence, we determine that a finding
of "more than 150 grams" on the basis of this
record is clearly erroneous. The record, however,
does support, for relevant conduct purposes, a
sentence within the range of 50 to 150 grams of
crack. Accordingly, the sentence is VACATED and the
case REMANDED to the district court for
resentencing. At resentencing, no further
proceedings will be necessary, other than an
adjustment of the sentence, if the district court
elects to sentence Palmer on the basis of 50 to
150 grams. To go beyond that level, more
proceedings regarding Griffin and a better record
on the reliability of the information he offered
will be required.

/* This appeal was originally resolved in an
unpublished order of March 27, 2001.
Subsequently, we granted a request to convert the
order to a published opinion.

/1 We have rounded the amounts off.