NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 1, 2013
Decided June 24, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2919

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 06 cr 138-2 |
| ISAIAH COLEMAN , | |
| *Defendant-Appellant*. | James B. Zagel, |
| | *Judge.* |

## ORDER

This is the second time Isaiah Coleman has appealed his sentence. The first time, we remanded after concluding that the district court had failed to properly calculate a guidelines imprisonment range by estimating the quantity of drugs Coleman bought from his supplier. On remand, the district court found Coleman responsible for ten kilograms or more of cocaine, calculated a range, and imposed a new sentence. But the court's drug quantity finding is too vague to permit appellate review, and so we vacate the sentence and remand for resentencing.

## Background

Coleman pleaded guilty to conspiring to distribute controlled substances. *See* 21 U.S.C. §§ 846, 841(a)(1). Before sentencing, the government told the probation officer

preparing Coleman's presentence report that it believed Coleman was responsible for the distribution of 29 kilograms of cocaine and 3 kilograms of fentanyl, a dangerous heroin substitute. *See United States v. Alvarado-Tizoc*, 656 F.3d 740, 741–42 (7th Cir. 2011). The cocaine estimate relied largely on a plea agreement signed by Lutgardo Chavez, Jr., Coleman's supplier, which purported to document a multi-year course of drug trafficking between Coleman and Chavez.

The government provided only partial corroboration of Chavez's account. Coleman admitted to only one purchase from Chavez, involving slightly less than three kilograms. The government had intercepted some calls between Chavez and Coleman that roughly coincided with two of the other deals described by Chavez, although the two appear to have been careful not to mention drugs over the phone, or to do so in code.

At sentencing, the government declined to call Chavez as a witness, explaining that Chavez had violated the terms of his plea agreement by withholding information about his supplier. But the parties stipulated that Chavez's plea agreement could still be considered by the court, and the government called several other witnesses, including the DEA agent who observed Coleman and Chavez meeting in August 2005 and two street-level dealers that Coleman sold fentanyl to. These dealers' accounts were the government's primary basis for estimating that Coleman had distributed three kilograms of fentanyl.

Coleman insisted that the government's drug-quantity estimate was unreliable, and that the district court should calculate his offense level based solely on the three kilograms of cocaine he had admitted to.

Without calculating a guidelines range, the court imposed a sentence of 156 months. The court, however, criticized the guidelines' use of drug quantities as a proxy for culpability and "affirmatively refus[ed] to fix an amount in this case," opining that there was "no reliable way to determine what kind of kilos were at stake here." The court offered that it did not find it very likely that Coleman had distributed only three kilograms of cocaine during his interactions with Chavez, concluding that "the proof . . . that this was a person who dealt with many kilos of illegal drugs over a period of years is strong." The prosecutor asked if the court would be willing to calculate a quantity for the purposes of the statutory minimum, to which the court responded: "I believe the only thing I'm prepared to say in the course of this offense is that you have a minimum of ten kilograms. That's the only thing I'm prepared to say." The prosecutor asked if the court was including the fentanyl in that calculation; the court answered that it had not because that was "much trickier to deal with."

Coleman appealed and the government conceded that the district court had erred by refusing to calculate a guidelines range. *United States v. Coleman*, 389 F. App'x 528, 529 (7th Cir. 2011). We vacated the sentence and remanded for resentencing. *Id.*

At the resentencing hearing, Coleman filed a brief rehashing his earlier argument that the government had failed to prove his responsibility for drug quantities in excess of the admitted three kilograms because, among other reasons, Chavez's history of dishonesty rendered his account unreliable. The district judge discussed drug quantity only briefly, but seemed to stand by his conclusion at the first sentencing that Coleman had distributed at least ten kilograms of cocaine:

> This was a case, as I recall, in which the exact quantity of drugs was very difficult to determine. In fact, I expressed the view that it can't be determined. And I'm instructed that I have to determine it, which means best guesses count, but I don't like best guesses.
>
> So instead of guessing, I think I'm going to stick with what I originally said, which is kilograms or more because I thought that was the absolute minimum that had been proved. Do I personally think it was more? Probably was. How much more? Can't say.

The prosecutor quickly followed up on these remarks: "Your Honor, based on your finding that it is 10 kilograms or more of cocaine, Mr. Coleman starts at level 32." *See* U.S.S.G. § 2D1.1(c)(4). The court calculated a guidelines range of 108 to 135 months, based on a total offense level of 31 (after accounting for adjustments not relevant here). The court sentenced Coleman to 120 months, explaining that he deserved a 3-year reduction (from the original 156-month sentence) because of his exemplary behavior in prison. Although this sentence corresponded to the statutory minimum for distributing more than five kilograms of cocaine, the court prepared a statement of reasons indicating that the minimum did not apply.

## Analysis

"Recognizing the importance of drug quantity in sentencing, we require that a sentencing court make an explicit drug-quantity finding and explain how it arrived at the sentence." *United States v. Palmer*, 248 F.3d 569, 571 (7th Cir. 2001); *see also United States v. Fudge*, 325 F.3d 910, 920 (7th Cir. 2003). While establishing a defendant's drug quantity can be an art, rather than an exact science, *United States v. Block*, 705 F.3d 755, 761 (7th Cir. 2013), this is not a license to engage in "nebulous eyeballing," *United States v. Krasinski*, 545 F.3d

546, 552 (7th Cir. 2008); *see also United States v. Jarrett*, 133 F.3d 519, 530 (7th Cir. 1998). At argument the government conceded that it does not know how the sentencing judge reached the ten kilogram estimate. We are also perplexed; the judge provided no explanation at the resentencing hearing. Instead, even after we remanded this case, the judge insisted that he would "stick with what I originally said" even though what he originally said was that there is no reliable way to determine the quantity of drugs for which Coleman is responsible. Although the judge indicated in his statement of reasons that he adopted the facts as described in the PSR, *see United States v. Are*, 590 F.3d 499, 525 (7th Cir. 2009) ("[W]here the district court adopts the PSR's findings . . . the court rarely needs to add details."); *Fudge*, 325 F.3d at 920; *United States v. Acosta*, 85 F.3d 275, 280 (7th Cir. 1996), nothing in the PSR sheds any light on how the judge came to ten kilograms. Thus, we see no alternative to remand.

Coleman asks that we remand with instructions to ignore Chavez's plea agreement, insisting that it would be clear error for his sentence to reflect Chavez's account in any way. The document lacks sufficient indicia of reliability, Coleman insists, because of Chavez's past dishonesty and the government's decision to not call him to testify. This instruction is unnecessary. In deciding whether to rely on a witness's estimate of drug quantity "the hallmark of reliability is consistency with facts and details," *United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000), and a district court would not clearly err merely by relying on a witness who has lied in the past or is biased, even if the witness's account lacks corroboration, *see United States v. Etchin*, 614 F.3d 729, 739 (7th Cir. 2010); *United State v. Johnson*, 489 F.3d 794, 798 (7th Cir. 2007); *United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir. 2006) (finding issues of witness credibility "virtually unassailable on appeal"). Coleman does not argue that Chavez's account is wholly contradicted by other evidence or nonsensical. *See United States v. Westmoreland*, 240 F.3d 618, 630 n.1 (7th Cir. 2001); *United States v. Robinson*, 164 F.3d 1068, 1070 (7th Cir. 1999). Nor is the fact that Chavez did not provide in-court testimony dispositive. *See Westmoreland*, 240 F.3d at 630 n.1. On remand the district court is free to rely on Chavez's account in whole, in part, or not at all, so long as it provides an explanation for its decision that is not clearly erroneous. If the court applies a statutory minimum, it should do so unambiguously and must conform with the Supreme Court's decision in *Alleyne v. United States*, No. 11-9335, 2013 WL 2922116 (June 17, 2013). *See id.* at *10("[T]he core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.") (overruling *Harris v. United States*, 536 U.S. 545 (2002)).

Accordingly, we **VACATE** Coleman's sentence and **REMAND** for resentencing. Circuit Rule 36 shall apply on remand.