In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3733

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GREGORY F. YOUNG,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:16-cr-40002-SLD-1 — **Sara Darrow**, *Judge.*

ARGUED MARCH 29, 2017 — DECIDED JULY 13, 2017

Before WOOD, *Chief Judge*, and ROVNER and WILLIAMS,
*Circuit Judges*.

ROVNER, *Circuit Judge*. Gregory F. Young pled guilty to one
count of unlawful possession of a firearm by a felon. He
challenges his sentence on appeal, asserting that the court
procedurally erred by relying on a clearly erroneous fact and

by incorrectly applying guidelines commentary when determining his sentence. We affirm.

## I.

In 2007, Young was convicted of two counts of burglary in Indiana. After serving a term of imprisonment, he was released on probation in March 2015. Young was under the influence of cocaine when he committed the robberies and so, as a condition of probation, he was subject to random drug screenings. In October 2015, he appeared for a random drug test wearing a "Whizzinator," a prosthetic penis that comes with a synthetic urine pack.[1] The device was confiscated and Young provided a urine sample that tested positive for cocaine, opiates and marijuana. A warrant was issued for his arrest. The next month, he was stopped by a state trooper while driving through Illinois because his windshield was obstructed by a number of air fresheners. *See United States v. Garcia-Garcia*, 633 F.3d 608, 615–16 (7th Cir. 2011) (noting that air fresheners may (or may not) constitute material obstructions under Illinois law depending on their size, their position relative to the driver's line of vision, and whether they are stationary or mobile); 625 ILCS 5/12-503(c) ("No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield … which materially obstructs

---

[1] The Whizzinator bills itself as a sex toy and warns purchasers that the product is "not intended for any illegal purposes. Nor is it to be used to defeat lawfully administered drug tests." *See* http://www. thewhizzinator.com/whizzinator.html (last visited July 6, 2017). Yet the product comes with "medical grade urine" and an "ultra-quiet flow system."

the driver's view."). A records check revealed that he had an outstanding warrant in Indiana. He consented to a pat-down search that led to the discovery of six rounds of .40 caliber ammunition, a quarter gram of heroin and a half gram of marijuana in his pants pockets. In a subsequent search of the vehicle, law enforcement officers found a loaded Smith & Wesson .40 caliber semi-automatic handgun, an unloaded SKS-type semi-automatic 7.62 mm rifle, nine SKS rifle magazines (eight of which were fully loaded with a total of 221 rounds of 7.62 mm ammunition), 1.3 pounds of marijuana, and a half pound of synthetic marijuana. After waiving his right to remain silent, Young explained to law enforcement officers that he had the guns and ammunition because he believed that the gang to which he previously belonged wanted to kill him over an old drug debt.

Young pled guilty to a single count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). The parties agreed that Young's base offense level was 20 under guidelines section 2K2.1(a)(4)(B). That level was increased by four under section 2K2.1(b)(6)(B) because Young possessed the firearm in connection with another felony offense, namely, possession of a controlled substance. The court subtracted three levels for acceptance of responsibility under section 3E1.1, resulting in a total offense level of 21. Young's criminal history placed him in Category V, and the resultant sentencing range was 70 to 87 months. Young requested a sentence of 70 months and the government simply requested a within-guidelines sentence.

The probation officer suggested that an upward variance might be appropriate under section 4B1.2(a) and the accompa-

nying Application Note 4, based on Young's prior burglary convictions. Section 4B1.2(a), which defines the term "crime of violence," had recently been amended to remove "burglary of a dwelling" from the list of crimes of violence. Had it remained on the list, Young's base offense level would have been 22 rather than 20, and his resultant guidelines range would have been 84 to 105 months' imprisonment. Application Note 4 provides that there may be cases in which a burglary involves violence but does not qualify as a crime of violence under section 4B1.2(a), and so an upward departure may be appropriate to account for that circumstance. Young responded to the probation officer's suggestion by contending that there were no facts in the presentence report regarding his burglary convictions that would support an upward variance for violence.

The presentence report described the two counts of burglary for which he was convicted as follows:

> On February 5, 2007, the defendant did break and enter into the dwelling of Hugo Gonzalez Ibarra, with the intent to commit a felony therein, to-wit: the crime of Theft. Count 2 - Burglary, a Class B Felony, I.C. Section 35-43-2-1(1)(B)(i).

> On February 5, 2007, the defendant did break and enter into the dwelling of James Johnson, with the intent to commit a felony therein, to-wit: the crime of Theft. Count 4 - Burglary, a Class B Felony, I.C. Section 35-43-2-1(1)(B)(i).

R. 22, at 7. Young was also charged with one count of taking property from Ibarra by using or threatening the use of force

while armed with a knife, and one count of knowingly confining Ibarra without his consent in a residence while armed with a deadly weapon, with both counts occurring the same day as the burglary charges. These additional charges were dismissed.

In explaining Young's sentence, the district court remarked:

> What I don't think is adequately captured by the guidelines is your base offense level. I've already found that the base offense level should be 20 because the assault—semi-assault rifle, the SKS that you possessed in addition to the loaded handgun— which you don't receive another bump for because that only applies if three or more guns are located accurately applies because of the high-capacity magazine that was in close proximity.

> But what isn't taken into consideration, which the guideline application notes say that I can consider, is the fact that your burglary convictions are no longer considered crimes of violence like technically when calculating the guidelines under Chapter 4, but the revised guidelines indicate that the Court may consider—and this is Application Note 4 to Chapter 4B1.2, that the Court may consider in instances which a burglary involves violence but does not qualify as a crime of violence as defined, a higher sentence or a higher criminal history category than would have applied if the burglary qualified as a crime of violence; therefore, an upward departure or variance may be appropriate.

> If your burglary applied to your base offense level as a crime of violence, then your base offense level would have been—your adjusted level would have been 23, and your guideline range would have been 84 to 105.
>
> In your PSR—it is scant with details to the burglary, but it does allege that you broke into the dwelling of another individual with the intent to commit a theft, and you were convicted of two of those counts of burglary. And I do find that that's not accurately— that conduct and the concern in somebody having that prior conviction and then possessing a firearm is not adequately captured by the range of—or at least the offense level, adjusted offense level of 21.
>
> Other than that, I think your guideline range is appropriate.

R. 33, at 74-75. The court then remarked on a number of aggravating circumstances, as well as other section 3553(a) factors before sentencing Young to eighty-four months' imprisonment. The court characterized that sentence as within the properly calculated guideline range, "but also what would be the low end of the guideline range if your burglaries were incorporated as a crime of violence into your base offense level[.]" R. 33, at 79. Young appeals.

## II.

On appeal, Young contends that the district court committed procedural error when it relied on a clearly erroneous fact to enhance his sentence. Our review of sentencing decisions is

limited to whether they are reasonable, applying the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. McLaughlin*, 760 F.3d 699, 703 (7th Cir. 2014). We first must ensure that the district court committed no significant procedural error, such as incorrectly calculating the guidelines range, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. *Gall*, 552 U.S. at 51. After *United States v. Booker*, 543 U.S. 220 (2005), whether the district court followed the proper procedures in imposing sentence is a question of law that we review *de novo*. *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007).[2]

Young contends that the district court procedurally erred when it found that his prior convictions for burglary to a dwelling involved violence and then relied on that clearly erroneous fact in determining his sentence. Although we agree with Young that the PSR contains no evidence supporting a finding that the burglaries were violent, the district court never made such a finding and did not adjust Young's sentence on

---

[2] The government asserts that we should review for plain error because the sentence was based on facts in the PSR to which Young did not object. We disagree. The PSR notes that, in addition to the burglaries for which he was convicted, Young was charged with two additional crimes during the Ibarra burglary that could be described as violent. However, the PSR also indicates that those charges were dropped, and so there are no facts in the PSR supporting a finding that the burglaries were violent. Moreover, Young objected to the probation officer's suggestion that his sentence could be enhanced on the ground that the burglary was violent, arguing that there was no evidence in the PSR that would support that factual conclusion. Therefore, Young preserved his objection and we will review the issue *de novo*.

that basis. The court simply addressed the probation officer's recommendation, noting what the sentencing range would have been if the burglaries still qualified as crimes of violence. The court also remarked that the chosen sentence of eighty-four months was both within the properly calculated guidelines range and at the bottom of the range if the burglaries had counted as crimes of violence. But the court gave no indication that it was enhancing the sentence because it found the burglaries to be crimes of violence.

A fair reading of the district court's comments during sentencing indicates that the court gave thorough consideration to both the properly calculated guidelines range and the relevant section 3553(a) factors. The court first indicated that the guidelines did not adequately account for the offense conduct, noting that Young possessed both a semi-assault rifle and a loaded handgun, but that there was no sentencing consequence for the second firearm because an enhancement for multiple weapons took effect only when three or more firearms were located. As for the burglaries, the court noted that there were very few details of those crimes in the PSR but that the calculated offense level did not adequately capture the concerns raised by a person possessing firearms with two burglary convictions in his recent criminal history.

The district judge was also "concerned greatly" by Young's conduct shortly after being released from prison for the burglaries. From a recidivism perspective, the court was troubled that Young tested positive for drugs shortly after being placed on probation, and that he used a device to attempt to evade that positive test result. The court also noted that Young possessed nine magazines, eight of which were

loaded. Four were high-capacity magazines that fit the semi-automatic rifle that Young possessed. In all, he had 221 rounds of ammunition and a loaded handgun in addition to the rifle, admittedly because he believed that a gang wanted to kill him over a drug debt. The court remarked:

> Think about it for a minute. Riding around in a vehicle with all this ammunition, with a high-capacity magazine, with a semi-assault rifle, with a bayonet attached, with a loaded firearm, with over a pound of marijuana, with an amount of heroin, so much could have gone wrong. The reason why you possessed those things—I have no doubt that, if pressed, you would have used them.

> And that's a very reason why the status offense of being a felon in possession is, is criminalized. It's why this statute exists, to address situations such as what occurred here. So, this offense conduct is incredibly serious.

R. 33, at 76. As with the positive drug test, the judge remarked that she was very concerned that Young engaged in this conduct so soon after being released from prison, raising questions about recidivism and specific deterrence.

In the end, the court summarized the reasons for the chosen sentence:

> But because of the concerns that I've expressed about the seriousness of the offense, my grave concerns about your high likelihood to recidivate based on your prior non-compliance with probation,

> as well as the fact that the previous lengthy sentence did not deter your criminal conduct in this case, the seriousness of the offense, all your history and characteristics, I find that still within the range of your properly calculated guideline range but also what would be the low end of the guideline range if your burglaries were incorporated as a crime of violence into your base offense level, I find that a sentence of 84 months is appropriate and not greater than necessary to address all of those factors.

R. 33, at 79.

Noticeably absent from that list is a finding that the burglaries were violent or a reliance on such a finding. The burglaries concerned the court because the defendant, with those convictions in his history, and with a controlled substance problem, was now upping the ante by arming himself to the hilt. The court expressed some disagreement with the guideline amendment that removed burglary from the list of crimes of violence. But after *Pepper v. United States*, 562 U.S. 476, 501 (2011), district courts are free to disagree with a guideline provision and adjust a sentence accordingly. Indeed, in an appropriate case, a district court may even impose a non-guidelines sentence based on disagreement with the Sentencing Commission's views. In this instance, the court at most used its concerns about the burglaries, followed by a weapons offense, to adjust the sentence *within* the properly calculated guidelines range. There was no error in doing so.

AFFIRMED.