In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-2258

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEENAN ROLLERSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17-cr-00101-JPH-DML-1 — **James P. Hanlon**, *Judge.*

_____

ARGUED MAY 26, 2021 — DECIDED JULY 30, 2021

_____

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit
Judges.*

HAMILTON, *Circuit Judge.* A jury convicted defendant Keenan Rollerson on drug and firearm charges but acquitted him on other drug charges. He appeals only his sentence, arguing that the district court erred by increasing his Sentencing Guideline range based on drug activity for which he was either acquitted or never charged. Specifically, Rollerson claims that the prosecution did not present sufficiently reliable

information that he sold heroin and fentanyl to an informant during four controlled drug buys for which he was not charged. He also asserts that those uncharged controlled buys and other drugs for which he was acquitted were not "part of the same course of conduct … scheme or plan" as his offenses of conviction. U.S.S.G. § 1B1.3(a)(2). We affirm Rollerson's sentence because the conduct at issue was supported by sufficiently reliable information and was relevant to his convictions. To be sure, the record at sentencing on the controlled buys was sparse. But at least in the absence of contradictory evidence, a police officer's affidavit attesting that the buys actually occurred provided the "modicum of reliability" that is needed to find by a preponderance of the evidence that Rollerson committed those additional crimes. See *United States v. Helding*, 948 F.3d 864, 871 (7th Cir. 2020).

I.  *Factual and Procedural Background*

In July 2016, the Drug Enforcement Administration (DEA) began investigating Rollerson's drug dealing activities in Indianapolis. The following spring, the DEA and local law enforcement used a confidential informant to arrange controlled drug buys from Rollerson. The government asserts that on four occasions, Rollerson sold drugs to the informant at an Indianapolis apartment that he controlled: twenty-five grams of heroin on March 31, twenty-five grams of heroin on April 3, twenty-four grams of fentanyl on April 17, and thirty grams of fentanyl on April 24. The police used these controlled buys to secure search warrants for the apartment and for Rollerson's home.

On April 27, 2017, after setting up surveillance at both addresses, the police stopped Rollerson for speeding. They recovered a gun and marijuana from his car. Rollerson admitted

the gun and marijuana were his. He also acknowledged that he was a convicted felon. When told that police were about to search his residences, Rollerson said he would cooperate and that, although his son was home, Rollerson himself "was the only one who had something to do with the drug sales."

Police then took Rollerson to his home, where they found over $150,000 in cash that Rollerson admitted were drug proceeds. Rollerson was also in possession of a key to the stash house apartment. He told police that they would find multiple kilograms of heroin hidden there. The search of the apartment actually uncovered four kilograms of fentanyl, fifty-two grams of heroin, ninety-seven grams of cocaine, and two hundred thirty-six grams of tramadol, as well as digital scales, multiple firearms, and mail addressed to Rollerson at that address.

On May 2, 2017, the government filed a criminal complaint against Rollerson based on an affidavit by DEA Task Force Officer Marc Campbell. In the affidavit, Officer Campbell described the course of the investigation and the contraband found at Rollerson's home and apartment. The affidavit also included a brief description of the controlled buys, attesting that "Between March 2017 and April 2017, DEA/IMPD utilized an IMPD Confidential Source (CS) to conduct multiple controlled purchases of heroin from ROLLERSON in Indianapolis, Indiana. Each of these controlled purchases resulted in the seizure of heroin and fentanyl." These controlled buys, however, were not included in the government's charges— which focused instead on the drugs and guns uncovered at the stash house apartment.

A grand jury indicted Rollerson on eight charges: Possession with Intent to Distribute Fentanyl (Count 1), Heroin

(Count 2), Cocaine (Count 3), and Tramadol (Count 4), as well as Unlawful Possession of Firearms by a Convicted Felon (Counts 5–8). The case went to trial, where the jury convicted Rollerson on Counts 2 and 5–8 (heroin and firearm offenses) but acquitted him on Counts 1, 3, and 4 (the fentanyl, cocaine, and tramadol).

The Presentence Investigation Report (PSR) recommended a Sentencing Guideline range of 262 to 327 months for Count 2. This range was based upon a quantity of drugs that included not only the heroin in the offense of conviction but also the fentanyl, cocaine, and tramadol from the acquitted counts and the four controlled buys used to obtain the search warrants. (The different types and amounts of drugs were all converted to a total "Converted Drug Weight" of 10,445.75 kilograms using the drug conversion tables in § 2D1.1, Note 8.)

At sentencing, Rollerson objected to the PSR's drug quantity, arguing (1) that the record contained no reliable information supporting the uncharged controlled-buy amounts, and (2) that neither the controlled buys nor the acquitted fentanyl, cocaine, and tramadol were relevant to his conviction for heroin. Without these uncharged and acquitted drug quantities, Rollerson's guideline range for Count 2 would have been a much lower 110 to 137 months.

The district court overruled Rollerson's objections and explained its reasons for including both the uncharged and acquitted drug amounts in calculating the guideline range. As to the controlled buys, Judge Hanlon said:

> [I]n Paragraph 12 of the presentence report there is some detailed information about the

> controlled purchases. It lays out that there were
> four controlled purchases involving Fentanyl
> and heroin. It lays out the quantities involved.
> *We also have the affidavit that was filed in support of*
> *the criminal complaint, which also discusses the con-*
> *trolled purchases.*

On that basis, the court concluded "that the information … relating to controlled buys is not unsupported or naked allegations" but rather "reliable" and "established by a preponderance of the evidence." The judge added that "there isn't any evidence that I have been made aware of from [Rollerson's] counsel that would cause me to call into question the reliability of what's contained in the report." The judge then explained that these controlled buys also constituted "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) because (1) they involved heroin, the same controlled substance as the offense of conviction; (2) they occurred at the same stash house as the convicted offense; and (3) they occurred within one month of the offense of conviction.

As for the fentanyl, cocaine, and tramadol for which the jury acquitted Rollerson, the judge explained that the trial evidence connecting Rollerson to the stash house—including but not limited to the mail addressed to him and the key in his possession—established his possession of those drugs by a preponderance of the evidence. The judge also found that this acquitted conduct was still relevant conduct for sentencing because it was all part of the same course of drug trafficking at the stash house. This was especially true, the judge said, because two of the controlled buys involved fentanyl, one of the substances found at the same stash house soon after that.

Accordingly, the judge sentenced Rollerson within the recommended guideline range: 276 months for Count 2, as well as 120 months for each gun charge (Counts 5–8), all to run concurrently. On appeal, Rollerson renews the arguments he raised at sentencing, that the district court erred by including both the uncharged and acquitted drug amounts in his guideline calculation.

## II. *Reliability*

"A criminal defendant has a due process right to be sentenced based on accurate information…. [W]here the district court sentences a defendant based on the drug-quantity guidelines, it must find the government's information sufficiently reliable to determine drug quantity by a preponderance of the evidence." *Helding*, 948 F.3d at 870, citing *United States v. Tucker*, 404 U.S. 443, 447 (1972), and *United States v. Lister*, 432 F.3d 754, 762 (7th Cir. 2005). Rollerson claims that the uncharged and acquitted drug amounts should not count toward his guideline range because the prosecution failed to prove them with reliable information by a preponderance of the evidence.

We review the substantive reasonableness of a sentence under an abuse-of-discretion standard, but we "must first ensure that the district court committed no significant procedural error, such as … selecting a sentence based on clearly erroneous facts…." *Gall v. United States*, 552 U.S. 38, 51 (2007). We have thus said that "whether the district court followed the proper procedures in imposing sentence is a question of law that we review *de novo*." *United States v. Young*, 863 F.3d 685, 688 (7th Cir. 2017), citing *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007). Here, though, the "significant procedural error" that Rollerson points to is the enhancement

of his sentence "based on *clearly erroneous* facts." *Gall*, 552 U.S. at 51 (emphasis added). So ultimately we ask whether the district judge clearly erred in finding that the government proved Rollerson's conduct by a preponderance of the evidence. See *United States v. Sandidge*, 784 F.3d 1055, 1061–63 (7th Cir. 2015) (affirming sentence enhancement; district court "did not commit clear error" in finding "sufficiently reliable" information proving defendant's conduct by preponderance of evidence).

"A sentencing court acts within its discretion when it credits confidential informants' statements about drug quantity, but when a defendant objects, the evidence supporting that quantity must be found to be reliable." *Helding*, 948 F.3d at 866. The "threshold for a sufficient reliability finding" is "low." *Id.* at 871. But if the PSR "asserts 'nothing but a naked or unsupported charge,' the defendant's denial of that information suffices to cast doubt on its accuracy." *Id.* at 870, quoting *United States v. Marks*, 864 F.3d 575, 580 (7th Cir. 2017). A truly bare allegation and bare denial would be in equipoise, unable to meet the prosecution's burden of proof by a preponderance of the evidence. Once the prosecution presents sufficiently reliable evidence, however, it will meet its burden unless the defense can muster evidence in the other direction.

Here, the prosecution provided sufficiently reliable evidence. As for Rollerson's acquitted conduct, the evidence at trial amply supported a finding by a preponderance of the evidence that Rollerson possessed the fentanyl, cocaine, and tramadol found in the stash house. Rollerson had the key to the stash house. Mail was addressed to him there. An officer testified to seeing him enter or exit the apartment on at least six occasions over the course of the investigation. To top those

off, when officers told Rollerson that the apartment would be searched, he admitted that multiple kilograms of drugs were hidden there and that he—not his son—was responsible for them.[1]

The uncharged drug buys present a different problem. The PSR described these four controlled buys in detail, saying that, on each occasion, Rollerson directed the informant to meet him at the stash house, drove there, and then sold the informant either heroin or fentanyl. The PSR stated the drug amount recovered in each buy. The PSR said that its source for all these details was the police affidavit used to obtain the search warrant for the stash house. That affidavit, however, was not attached to the PSR and was not offered at sentencing by the government or the defense. It is not in the record at all, even though both sides admit it is *the* key piece of evidence bearing on the reliability of the uncharged drug amounts. As a result, the only statement of the drug amounts in our record came from the PSR's summary of that police document that the district judge and we have not seen.[2]

The record establishing the reliability of the controlled buys was sparse, but it was sufficient as a matter of due process, at least in the absence of conflicting evidence. In addition to the PSR's summary of the search warrant affidavit, the judge also relied upon Officer Campbell's affidavit attached

---

[1] The practice of considering acquitted conduct at sentencing is controversial but is clearly allowed if the conduct is proven by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 149 (1997); *United States v. Waltower*, 643 F.3d 572, 577 (7th Cir. 2011).

[2] The absence of the search warrant affidavit presents something of a mystery. Both sides have it and both could easily have offered it at sentencing. For tactical reasons, however, both sides chose not to do so.

to the criminal complaint. That affidavit also attested to the occurrence of the controlled buys, albeit briefly: "Between March 2017 and April 2017, DEA/IMPD utilized an IMPD Confidential Source (CS) to conduct multiple controlled purchases of heroin from ROLLERSON in Indianapolis, Indiana. Each of these controlled purchases resulted in the seizure of heroin and fentanyl."

This police affidavit added a "modicum of reliability" to the PSR's description of the controlled-buy amounts. *Helding*, 948 F.3d at 871. It was sworn under penalty of perjury, a process meant to "impress upon the affiant 'the solemnity and importance of his or her words and of the promise to be truthful, in moral, religious, or legal terms.'" 2 Wayne R. LaFave, Search & Seizure § 4.3(e) (6th ed.), quoting *State v. Gutierrez-Perez*, 337 P.3d 205, 210 (Utah 2014). Indeed, the Fourth Amendment's express requirement that warrants may issue only if "supported by Oath or affirmation" reflects the idea that sworn affidavits bear an added signal of reliability. Accordingly, the district judge's explicit reliance on Officer Campbell's affidavit submitted with the criminal complaint was enough to establish the reliability of the PSR's allegations. See *United States v. Smith*, 280 F.3d 807, 810–11 (7th Cir. 2002) (rejecting reliability challenge to gun enhancement where detective testified that, after a controlled drug buy, the informant told the detective that Smith pointed a gun at the informant).

For purposes of argument, we assume that, absent Officer Campbell's affidavit, the prosecution might well have needed to come forward with the search warrant affidavit if it wanted to rely on the four buys. Although the PSR contained specific allegations, "specificity alone … does not make information

reliable." *Helding*, 948 F.3d at 869. We say might, however, be-cause there are important differences between the PSR allega-tions here and those we held insufficient in *Helding*. In *Helding*, the defendant's drug calculation skyrocketed based on a confidential informant's unsubstantiated allegations that the defendant sold him methamphetamine a year before the actual police investigation that led to the defendant's charges. Unlike this case, *Helding* "involved no controlled buys with any CI…." *Id.* at 868. The informant's alleged purchase of methamphetamine in *Helding* was not initiated and observed by police—it was merely a story about Helding's past activity that was relayed to police. Moreover, in *Helding*, "The district court saw no affidavits … corroborating" the informant's al-legations. *Id.* at 871. "More to it, nowhere did the PSR contain any information—even a representation by law enforce-ment—that the informants' statements were known to be re-liable." *Id.* at 869.

The uncharged drug amounts in this case were not based on uncorroborated allegations by an informant whose trust-worthiness was unknown. Rather, the PSR's description came from police documents supplied to the probation office re-counting the officers' roles in setting up and observing these controlled buys. Language in *Helding* suggested that this might be sufficient: "It may be enough for the government to supply the probation office, and, in turn, for the PSR to in-clude, some statement bearing on the reliability of infor-mation provided by a confidential source." *Id.* at 872. We need not decide that, however, given the inclusion of Officer Camp-bell's affidavit in the sentencing record.

At least in the absence of conflicting evidence, the PSR's assertions concerning the controlled-buy amounts were

sufficiently reliable to support a finding that they were proven by a preponderance of the evidence. In due process terms, the defense had the opportunity to present conflicting evidence about the controlled buys. The defense also had the opportunity to present the search warrant affidavit or to call Officer Campbell to testify. The defense chose not to exercise those options, which left the government's sparse evidence unrebutted. We see no indication that the defense was denied a fair hearing on these subjects. Still, it is worth repeating our earlier advice: "While it's not required that a judge hear personally from witnesses under oath at a sentencing hearing about drug quantities, we think it's not a terribly bad idea to do so when the witness is going to provide the basis for … a defendant's relevant conduct." *Helding*, 948 F.3d at 871, quoting *United States v. Robinson*, 164 F.3d 1068, 1070 (7th Cir. 1999).

III. *Relevant Conduct*

Even if proven by a preponderance of the evidence, Rollerson's uncharged and acquitted conduct must still be "relevant" to his offenses of conviction to be used in his guideline calculation. U.S.S.G. § 1B1.3(a)(2). Rollerson asserts that neither the controlled buys nor the fentanyl, cocaine, and tramadol found at the stash house were "part of the same course of conduct or common scheme" as his conviction for possessing heroin with intent to distribute. See *id*. We disagree. The district court did not clearly err in finding that Rollerson's uncharged and acquitted conduct was relevant to his offense of conviction. See *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015) ("Whether uncharged offenses amount to relevant conduct under the Sentencing Guidelines is a factual determination, which we review for clear error.") (citation omitted).

The fact that a defendant engaged in other uncharged or acquitted drug transactions "is not sufficient to justify treating those transactions as 'relevant conduct' for sentencing purposes." *United States v. Ortiz*, 431 F.3d 1035, 1041 (7th Cir. 2005), quoting *United States v. Crockett*, 82 F.3d 722, 730 (7th Cir. 1996). In assessing relevant conduct, we look for "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant 'similarity, regularity and temporal proximity.'" *United States v. McGowan*, 478 F.3d 800, 802 (7th Cir. 2007), quoting *Ortiz*, 431 F.3d at 1040. These factors are derived from commentary in the Sentencing Guidelines explaining that, under U.S.S.G. § 1B1.3, conduct is part of a "common scheme or plan" if it is "substantially connected" to a convicted offense "by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." § 1B1.3, comment 5(B)(i). And, separately, activity is "part of the same course of conduct" as a convicted offense if it is "part of a single episode, spree, or ongoing series of offenses." *Id.* at 5(B)(ii).

What we know about Rollerson's uncharged drug buys showed similarity, regularity, and temporal proximity to his offense of conviction. Two of the buys involved heroin, the same drug for which Rollerson was convicted. The other two involved fentanyl, a drug that was also found in large quantities at the stash house. The buys took place at that same stash house. And they occurred regularly through the weeks leading to the search of the stash house in April 2017. These facts support the district court's finding that the uncharged buys constituted relevant conduct.

The same goes for the acquitted possession of fentanyl, cocaine, and tramadol. Rollerson sold fentanyl during two of the controlled buys at the stash house, and the police soon after those buys found a large amount of it, four kilograms. The fentanyl, cocaine, and tramadol were also found alongside the heroin for which Rollerson was convicted. Moreover, Rollerson's controlled buys involved two separate drugs, further supporting the district court's finding that the cocaine and tramadol were likely part of the same drug-dealing scheme as the heroin, even though those substances were not involved in the controlled buys.

Rollerson says his case is like *United States v. Ortiz*, 431 F.3d 1035 (7th Cir. 2005), and *United States v. Draheim*, 958 F.3d 651 (7th Cir. 2020), where we rejected relevant conduct findings. But those cases are not at all like Rollerson's. In *Ortiz*, we found that a defendant's alleged purchases of large amounts of cocaine across three states from 1997 to 1999 were not part of the same course of conduct or scheme as his convictions for selling much smaller amounts of marijuana and cocaine to a DEA informant in 2000 and 2001. 431 F.3d at 1041–42. We explained that the prosecution had failed to show temporal proximity (the alleged conduct occurred at least ten months before the offenses of conviction), regularity (the alleged conduct's frequency differed from that of the sales leading to Ortiz's convictions), or similarity (the alleged conduct occurred in a different location). *Id.* Rollerson's uncharged and acquitted drug activity, on the other hand, all occurred at the same location during the same month. *Draheim* is also readily distinguishable. That defendant's lone "sale of two grams of street meth in a city" simply did not "match up" with a "*collaborative bulk* order from the *other side of the nation* for nearly *fifty grams* of pure [meth]." 958 F.3d at 659–60 (emphases

added). So the conduct in *Draheim* occurred in a different location, involved much more drugs, and included other traffickers.

Because Rollerson's uncharged buys and acquitted drug amounts were relevant to his heroin conviction and proven with sufficiently reliable information, Rollerson's sentence is AFFIRMED.