In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3110

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RANDY HUBBERT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:18-cr-20018-1 — **Colin S. Bruce**, *Judge*.

SUBMITTED DECEMBER 7, 2021[*] — DECIDED MAY 31, 2022

Before ROVNER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges*.

---

[*] After this case was scheduled for oral argument, the parties filed a joint motion to waive argument, which the court granted. The appeal has therefore been submitted for decision on the briefs and the record. Fed. R. App. P. 34(f); Cir. R. 34(e).

ROVNER, *Circuit Judge*. Randy Hubbert appeals the sentence he received for the distribution of cocaine base. We affirm.

**I.**

Hubbert pleaded guilty to all four counts of an April 2018 indictment charging him with distributing cocaine base, known colloquially as crack cocaine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C). Each count corresponded to a controlled purchase by a confidential source from Hubbert—and in one instance, from Hubbert and an associate, Tyrone Bond—that took place in November 2016 and January 2017. The quantities purchased ranged from 12.3 to 49.4 grams. An additional controlled purchase from Bond alone was charged as a fifth count (naming Bond as the sole defendant) in the same indictment.

For sentencing purposes, the probation officer found that Hubbert qualified as a career offender pursuant to section 4B1.1(a) of the Sentencing Guidelines.[1] This was based on Hubbert's prior convictions in state court for (1) aggravated

---

[1] A defendant qualifies as a career offender if "(1) the defendant was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (Nov. 2018). "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

battery, and (2) possession of a controlled substance (cocaine) with intent to deliver. Hubbert's status as a career offender dictated that he be placed in a criminal history category of VI; but his 35 criminal history points independently placed him in the same criminal history category.

Hubbert objected to the career-offender designation, arguing in part that his previous conviction for possession with intent to deliver was really part and parcel of the same course of drug dealing that underlay his current conviction, and thus was not a "prior" offense that would trigger career-offender status, *see* U.S.S.G. § 4B1.1(a), but rather constituted relevant conduct vis-à-vis the federal offenses, *see* U.S.S.G. § 1B1.3. (Hubbert did not dispute that his conviction for aggravated battery constitutes a prior conviction for a crime of violence.) Hubbert also argued that his criminal history category of VI overstated the seriousness of his record and asked the court to vary downward to category IV. *See* U.S.S.G. § 4A1.3(b).

Hubbert's prior drug possession offense involved the sale of two-tenths of a gram of powder cocaine to a confidential source (someone other than the source who made the purchases charged in the federal prosecution) in Macon County, Illinois, in October 2011. But Hubbert was not charged with that offense until 2014, and he did not plead guilty to the offense until November 14, 2016, six days after the first of the controlled crack cocaine purchases charged in this federal case took place. During the state proceedings, there was some discussion of, and inquiry into, whether there would be any additional charges filed against Hubbert. After posing the question to local officials and receiving no reply, the state prosecutor professed ignorance, and although defense counsel and the state judge expressed some concern about the

prospect of additional charges, the court proceeded to sentencing.[2]

The district judge found that Hubbert's prior conviction in state court for possession with intent to distribute was properly treated as a prior conviction for purposes of the career-offender designation rather than as relevant conduct (per Guidelines § 1B1.3) vis-a-vis the current federal drug charges. Among other points, the judge noted that there was a five-year gap of time between the 2011 state offense and the controlled buys in 2016-17 underlying the federal charges, and the two sets of charges also involved different customers, drug types, and amounts. Moreover, Hubbert had not been charged with a conspiracy that might have been broad enough to encompass both sets of charges. *Cf. United States v. Garecht*, 183 F.3d 671, 674–75 (7th Cir. 1999) (defendant charged with multi-year marijuana conspiracy whose timeframe covered prior cocaine offense as well as instant marijuana offense). The judge therefore treated Hubbert as a career offender. As to Hubbert's criminal history, the judge noted that even if the 21 criminal history points corresponding to Hubbert's prior traffic and other minor offenses were disregarded, Hubbert would still be left with 14 points and would still fall into criminal history category VI. With a criminal history category of VI and with an offense level of 31, the

---

[2] When he sentenced Hubbert in the federal proceeding, the district judge rejected the notion that there had been any impropriety in the decision to bring federal charges against Hubbert notwithstanding the concerns that defense counsel and the state court judge had expressed when Hubbert was sentenced on the state charge in November 2016. Hubbert references these concerns in his appellate brief, but he does not raise them in support of an independent challenge to his conviction or sentence.

advisory Guidelines sentencing range was 188 to 235 months. The government recommended a sentence at the bottom of that range.

The district judge ordered Hubbert to serve a term of 188 months on each count, to run concurrently with one another.[3] Among other factors cited in support of that decision, the judge noted Hubbert's "horrible, horrible childhood" (R. 122 at 50), his history of drug use dating to an early age, his extensive and repeated involvement in criminal activity, and the likelihood that "unless [Hubbert] wants to radically change his manner of behavior" (R. 122 at 53), he might re-offend yet again upon release from the sentence imposed in this case.

## II.

On appeal, Hubbert renews his argument that it is error to treat him as a career offender because, as he sees it, his conviction in state court for possession with intent to distribute cocaine amounts to relevant conduct with respect to his federal distribution offenses and not a distinct "prior" offense that qualifies as a predicate for the career-offender designation. He also argues, secondarily, that his criminal history category of VI overstates the seriousness of his prior criminal conduct and that the district court abused its discretion in not varying downward to a lower category. Finally, he asserts that the district court erred in failing to consider whether his federal sentence should be served concurrently with rather than consecutive to his sentence on the state possession charge.

---

[3] The judge indicated that he was primarily relying on the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) in fashioning an appropriate sentence.

A. Career-offender designation

Whether Hubbert's conviction in state court for possession of cocaine with intent to distribute qualifies as a prior, predicate conviction for purposes of the career-offender designation constitutes a question of law that we review de novo. *United States v. Woods*, 556 F.3d 616, 622 (7th Cir. 2009), *overruled in part on other grounds by Gall v. United States*, 552 U.S. 38, 54–56, 128 S. Ct. 586, 599–600 (2007). We find no error in the district court's treatment of the state conviction as a prior offense rather than as relevant conduct.

As pertinent here, the career offender guideline requires that a defendant have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." § 4B1.1(a)(3). There is no dispute that Hubbert's conviction for aggravated assault qualifies as a prior conviction for a crime of violence, nor is there any dispute that the conviction for possession with the intent to distribute qualifies as a conviction for a controlled substance offense. The only dispute is over whether the latter conviction should be considered a "prior" conviction—that is, a conviction for conduct that both pre-dates and is separate and distinct from the criminal activity charged in this case.

Whether the state conviction for possession with intent to distribute qualifies as a prior conviction for purposes of the career offender enhancement depends on its relationship to the federal offenses. Section 4A1.2(a) defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt … for conduct not part of the instant offense." The commentary to the guideline in turn provides that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions

of § 1B1.3 (Relevant Conduct.)" § 4A1.2, comment., (n.1). *See United States v. Liddell*, 492 F.3d 920, 922 (7th Cir. 2007). For offenses like narcotics crimes as to which Guidelines section 3D1.2(d) would require grouping of multiple counts of conviction,[4] the relevant conduct guideline treats as relevant all acts that were part of the same course of conduct or a common scheme or plan as the offense of conviction. § 1B1.3(a)(2) & comment. (n.5(B)); *see United States v. Tankson*, 836 F.3d 873, 883-84 (7th Cir. 2016); *United States v. Farmer*, 543 F.3d 363, 372–73 (7th Cir. 2008). To determine whether the defendants' prior acts meet that test, a court looks to whether there is a "strong relationship between the uncharged conduct and the convicted offense," taking into account such factors as "similarity, regularity, and temporal proximity." *United States v. Ortiz*, 431 F.3d 1035, 1040 (7th Cir. 2005) (quoting *United States v. Acosta*, 85 F.3d 275, 281 (7th Cir. 1996)); *see also United States v. Rollerson*, 7 F.4th 565, 572 (7th Cir.), *cert. denied*, 142 S. Ct. 631 (2021); *United States v. Blackman*, 830 F.3d 721, 725 (7th Cir. 2016). However, the mere fact that the defendant has committed the same or similar crime on another occasion is not by itself sufficient to compel the conclusion that the prior offense constitutes relevant conduct vis-à-vis the conviction for which

---

[4] Offenses that are closely related are grouped together for sentencing purposes and essentially treated as a single offense. *See* U.S.S.G. Ch. 3, Pt. D, intro. comment. Section 3D1.2 thus provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." As relevant here, the guideline goes on to identify crimes for which the offense level "is determined largely on the basis of … the quantity of a substance involved" as offenses that involve substantially the same harm. § 3D1.2(d). Narcotics trafficking crimes fall into this category of offenses. *See* § 3D1.2 (citing offenses covered by § 2D1.1 as among offenses to be grouped under section § 3D1.2(d)).

he is being sentenced. *Ortiz*, 431 F.3d at 1040; *see also United States v. Clark*, 935 F.3d 558, 571 (7th Cir. 2019). Hubbert's prior possession offense involved a single transaction in 2011 that involved the sale of powder cocaine. Hubbert argues that the state offense should be characterized as relevant conduct rather than a discrete, prior crime. But to a significant extent his thinking on this point is colored by the fact that the prosecution for the 2011 offense was still pending when the criminal conduct underlying the subsequent federal prosecution began. In fact, however, there was a significant temporal gap between the two sets of offenses. Although Hubbert was not convicted and sentenced for the state possession-with-intent-to-deliver offense until late in 2016, after the first of the controlled buys underlying this federal case took place, there was a five-year gap between them, which by itself tilts against a finding that they were part of the same course of dealing. *See United States v. McGowan*, 478 F.3d 800, 802 (7th Cir. 2007); *United States v. Bullock*, 454 F.3d 637, 641–42 (7th Cir. 2006); *Ortiz*, 431 F.3d at 1041; *United States v. Palmer*, 248 F.3d 569, 571 (7th Cir. 2001) (per curiam); *United States v. Ruiz*, 178 F.3d 877, 882 (7th Cir. 1999); *cf. United States v. Vaughn*, 722 F.3d 918, 932–33 (7th Cir. 2013) (where evidence showed defendant was engaged in uninterrupted course of drug dealing in years leading up to charged offense, not plain error to treat sales that occurred nearly three years prior to charged offense as relevant conduct). Indeed, Hubbert was incarcerated on a traffic offense for a period of 18 months in 2013-14, which (presumably) imposed a hard stop on any ongoing narcotics trafficking. Although neither the passage of time nor his intervening incarceration (which was obviously not of his own choosing) necessarily precludes a finding that the prior conviction constitutes relevant conduct, *see Ruiz*, 178 F.3d at 881–

82, a strong showing of similarity and/or regularity would be required to connect the 2011 sale to the 2016-17 sales, U.S.S.G. § 1B1.3, comment., (n.5(B)(ii)); *Ortiz*, 431 F.3d at 1041 (collecting cases); *see also United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015). Here, there are significant differences between the 2011 transaction and the 2016-17 transactions: The former involved the sale of two-tenths of a gram of powder cocaine, whereas the latter involved the sale of significantly larger, multi-gram quantities of crack cocaine. There is also evidence that Hubbert was working in concert with at least one associate (his co-defendant, Tyrone Bond) in 2016-17. To be sure, there are several similarities between the two sets of sales: both took place in Decatur, Illinois, both were made to a confidential source (although the source in 2011 was not the same one who made the 2016 purchases), and both comprised controlled transactions instigated at the behest of the Decatur Police Department. And although the 2016-17 sales involved crack rather than powder cocaine, the confidential source to whom Hubbert made those sales reported to the Decatur police that he had previously purchased powder as well as crack cocaine from Hubbert. But given the lengthy passage of time and the points of distinction between the two sets of sales, the evidence does not show that the two sets of sales were part of a steady, unified, years-long course of drug dealing. *See United States v. Stephenson*, 557 F.3d 449, 457 (7th Cir. 2009).[5]

---

[5] A November 2016 Decatur police officer narrative concerning the investigation into Hubbert notes that Hubbert "has been responsible for distributing substantial quantities of cocaine for several years." R. 64-1 at 1. The narrative goes on to report a representation by the confidential source that he had been purchasing powder and crack cocaine from several individuals, including Hubbert, in the prior "few years." R. 64-1 at 2. These statements certainly suggest that the federally-charged sales that took

The 2011 sale was not part of the same course of conduct as the 2016-17 conduct charged in this case and does not qualify as relevant conduct. Hubbert's conviction for the 2011 offense was properly treated as a prior conviction for purposes of the career offender guideline.

B.  Hubbert's criminal history

As we noted previously, Hubbert was assigned a criminal history category of VI on two independent grounds: (1) he is a career offender, and (2) he has 35 criminal history points. Hubbert contends here as he did below that because many of his criminal history points derive from traffic offenses and other minor crimes, the criminal history category of VI substantially overstates the gravity of his criminal past. Our conclusion that Hubbert was properly treated as a career offender based on his prior convictions for possession of cocaine with the intent to distribute and aggravated assault largely renders this argument moot, because the Guidelines mandate a criminal history category of VI for any career offender. § 4B1.1(b). For the sake of completeness, however, we note that, as the district judge pointed out, even if the points assigned to Hubbert's traffic and other minor offenses are subtracted from the total, Hubbert would still be left with 14 points, which would suffice to place him in category VI independently of Hubbert's career-offender status. Hubbert wanted the judge to vary downward to category IV, *see* U.S.S.G. § 4A1.3(b)(1) (granting sentencing judge authority to do so where defendant's criminal history category overstates the gravity of his

---

place in 2016 and early 2017 were part of an extended pattern of cocaine sales. But by themselves they do not serve to connect the 2016-17 sales to the 2011 transaction underlying the state charge.

criminal past or the likelihood that he will re-offend); *see also United States v. Corner*, 598 F.3d 411 (7th Cir. 2010) (en banc) (sentencing judge has the authority to disagree with, and vary from, the career offender guideline), but we see no abuse of discretion in his decision not to do so. Hubbert has a criminal history that includes 27 convictions as an adult alone (he is presently 37 years old), a number of which are fairly serious (firearm offenses, a drug trafficking offense, aggravated battery, domestic battery, and aggravated driving under the influence of alcohol). The district judge considered this issue conscientiously and explained why he was not convinced he should vary downward. He acted within his ample discretion on this point.

C. Failure to specify whether the federal sentence would run concurrently with or consecutively to any other sentence

The district court did not specify whether Hubbert's sentence in this case should run concurrently with or consecutively to the state sentence, although under 18 U.S.C. § 3584 the judge possessed the discretion to order the federal sentence to run concurrently with any undischarged term imposed previously. *See also* U.S.S.G. § 5G1.3(d). Because this issue was not raised below, our review is only for plain error. *E.g., United States v. Clark, supra*, 935 F.3d at 569.

The express presumption under section 3584(a) is that multiple terms of imprisonment imposed at different times shall run consecutively to one another unless the court specifies otherwise, so the judge's silence on this point allowed the presumption to dictate how the sentences will be served. In any case, it appears from the record that Hubbert had already been paroled from state custody by the time of the sentencing in this case, *see* R. 60 ¶ 72, so it is not clear how Hubbert was

prejudiced by the court's implicit decision that his federal sentence should not run concurrently with his prior state sentence. No plain error occurred in this respect.

### III.

For the foregoing reasons, we AFFIRM Hubbert's sentence.